**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Central Savings and Loan Association, Plaintiff–Appellee,**

v.

**Daniel T. McSWEENEY; Frederick C. Stalder, Defendants–Appellants.**

No. 92–55242.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 3, 1992.

Submission Deferred June 18, 1992.

Resubmitted July 30, 1992.

Decided Sept. 30, 1992.

Charles H. Dick, Jr., Baker & McKenzie, R. William Bowen, Luce, Forward, Hamilton & Scripps, San Diego, Cal., for defendants-appellants.

Edward J. O'Meara, Richard J. Osterman, F.D.I.C., Washington, D.C., for plaintiff-appellee.

Before: POOLE, D.W. NELSON, and BOOCHEVER, Circuit Judges.

BOOCHEVER, Circuit Judge:

The Federal Deposit Insurance Corporation (FDIC) brought this action against two former directors of a failed savings and loan, seeking damages against them for breach of fiduciary duties. The case is before us on interlocutory expedited appeal from the district court's order denying the directors' motions to dismiss. This appeal presents two questions: whether the FDIC's claims are time-barred under California's two-year statute of limitations for negligence actions, and whether the federal Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73, 103 Stat. 183 (1989), sets gross negligence as the uniform standard for director liability and thus preempts the FDIC's state claims against the directors alleging a lesser degree of fault. We answer both questions in the negative, and we affirm.

## BACKGROUND

Daniel McSweeney and Frederick Stalder ("the officers") are former directors and officers of Central Savings and Loan Association ("Central"), a failed San Diego thrift. McSweeney was appointed to Central's board in 1978 and became its president in 1980. Stalder joined Central in 1947 and served as director, president, chairman of the board, and chief executive officer at various times until 1985. When McSweeney became president he instituted various investment and loan programs which resulted in substantial financial losses and eventually precipitated Central's demise. Central's board fired McSweeney in

January 1984. In April 1984, the board asked Stalder to assist in its investigation of McSweeney, but Stalder informed its members that he had no knowledge of intentional wrongdoing or incompetence on McSweeney's part. Stalder was fired in May 1985.

On April 10, 1987, Central was placed in receivership by the Federal Savings and Loan Insurance Corporation (FSLIC). Upon enactment of FIRREA in August 1989, the FDIC became the FSLIC's successor on Central's claims against Central's former officers and directors. On April 5, 1991, the FDIC filed a complaint for damages for breach of fiduciary duties against McSweeney and Stalder. The directors moved to dismiss, arguing that the complaint alleged simple negligence and therefore (1) the claims were barred by California's two-year state statute of limitations for negligence and (2) the claims were precluded under FIRREA, which the directors alleged set gross negligence as the uniform standard of liability.

In a published order, the district court denied the motions to dismiss. *FDIC v. McSweeney*, 772 F.Supp. 1154 (S.D.Cal. 1991). It certified the order for interlocutory appeal, and we granted the defendants' petition for permission to appeal. We review *de novo* the two questions of law confronting us in this appeal. *See In re Hawaii Fed. Asbestos Cases*, 871 F.2d 891, 893 (9th Cir.1989) (applicability of limitations statute); *Batchelor v. Oak Hill Medical Group*, 870 F.2d 1446, 1447 (9th Cir.1989) (statutory construction).

## DISCUSSION

### I. *Statute of Limitations*

■ The officers first contend that the FDIC's claims against them are time-barred under California law. The FDIC filed the complaint on April 5, 1991, within four years of April 10, 1987, the date Central was placed in receivership by the

FSLIC. Under FIRREA, the FDIC has at least three years after a failed thrift goes into receivership to file tort claims against former officers or directors; any longer period applicable under state law controls. 12 U.S.C. § 1821(d)(14)(A)(ii) (Supp. II 1990). The FDIC may not, however, revive claims for which the state limitations period has expired before the date of federal receivership. *FDIC v. Former Officers & Directors of Metro. Bank*, 884 F.2d 1304, 1309 n. 4 (9th Cir.1989) (citing *Guaranty Trust Co. v. United States*, 304 U.S. 126, 142, 58 S.Ct. 785, 793, 82 L.Ed. 1224 (1938)), *cert. denied*, 496 U.S. 936, 110 S.Ct. 3215, 110 L.Ed.2d 662 (1990). Thus we must determine whether the FDIC's claims against McSweeney and Stalder had become time-barred under California law before April 10, 1987.

■ Three limitations periods are relevant to our analysis. Section 339(1) of the California Code of Civil Procedure provides a two-year limitations period for negligence actions. Section 338(d) provides a three-year limitations period for actions based on fraud or mistake. Section 343, the "catch-all" statute, provides a four-year limitations period for actions not otherwise specifically provided for. Cal.Civ.Proc.Code §§ 339(1), 338(d), 343 (West 1982 & Supp. 1992). To determine which statutory period applies, California courts look to the substance or gravamen of the complaint and the nature of the right sued upon rather than the caption of the complaint or the relief sought. *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1520 (9th Cir.1985) (applying California law).

The directors contend that the gravamen of the FDIC's complaint charging them with breach of their fiduciary duties is breach of the duty of care, or negligence, and thus the two-year limitations period applies.[1] Applying this reasoning, the directors argue that because the allegations of the complaint concern conduct that oc-

---

**1.** We assume for purposes of deciding whether the two-year statute applies that breach of the fiduciary duty of care is the only type of claim presented by the FDIC's complaint. The complaint, however, also appears to allege that McSweeney breached his fiduciary duty of loyalty, for it alleges instances of conflict of interest, self-dealing, and misrepresentation. *See* Complaint ¶¶ 10–21.

curred prior to April 1984, the claims became time-barred by April 1986, nearly a year before Central went into receivership. Circuit precedent interpreting California law compels us to disagree. Most recently, in *Davis & Cox*, 751 F.2d at 1520, we applied California's four-year statute of limitations to a complaint for breach of fiduciary duty that alleged conduct similar to that alleged against the officers here. *See also Robuck v. Dean Witter & Co.*, 649 F.2d 641, 644–45 & n. 2 (9th Cir.1980) (California's four-year limitations period applies where breach of fiduciary duty is alleged).

In *Davis & Cox* we examined claims for breach of fiduciary duty brought by Summa Corporation against Davis, who had been the corporation's attorney and a corporate director. Summa alleged that Davis had breached his fiduciary duty as a director, wasted corporate assets, and mismanaged Summa's operations, first in failing to obtain an adequate appraisal of a hotel Summa sought to purchase and authorizing its purchase at an inflated price, and second in using corporate aircraft for personal reasons. At issue was whether California's one-year limitations period for attorney malpractice applied to these claims, and, if not, what limitations period did apply. We determined that Summa's claims concerned Davis' conduct in his capacity as a corporate director rather than as the corporation's attorney, and that the gravamen of the complaint was therefore breach of fiduciary duty as a director. Thus the one-year limitations period for attorney malpractice was inapplicable. Rather, we concluded that "actions founded upon a breach of fiduciary duty" were governed by the limitations period set forth in California's four-year catch-all statute, Cal.Civ.Proc.Code § 343. *Davis & Cox*, 751 F.2d at 1520 (citing *Robuck*, 649 F.2d at 644 (applying California law)).[2]

The officers attempt to distinguish *Davis & Cox* by characterizing it as involving only a breach of the duty of loyalty.

Davis' mismanagement of corporate assets by failing to obtain adequate appraisals and buying property at inflated prices, however, like the defendants' alleged mismanagement of depositors' funds here, constituted a breach of the duty of care. Moreover, because we were squarely presented with the issue of which limitations period was applicable when the complaint alleged a director's mismanagement of corporate assets, the *Davis & Cox* holding is not dictum, as the defendants contend it is.

The defendants argue, however, that *Davis & Cox* conflicts with *Vucinich v. Paine, Webber, Jackson & Curtis, Inc.*, 739 F.2d 1434 (9th Cir.1984), an earlier circuit decision that they urge us to follow. They point to a statement appearing in that opinion that the "two-year [limitations] period [of section 339(1) ] applies to ... negligence and breach of fiduciary duty claims." *Id.* at 1436. The issue in *Vucinich*, however, was *when* the statute of limitations began to run, not *which* limitations period applied. *See id.* at 1436–37 (holding only that whether the limitations period was tolled depended on disputed facts concerning the defendant's conduct, thus precluding summary judgment that the claims were time-barred). Accordingly, the *Vucinich* court's statement regarding the two-year limitations period was dictum. *See United States v. Daniels*, 902 F.2d 1238, 1241 (7th Cir.) ("Judicial assumptions concerning ... issues that are not contested are not holdings."), *cert. denied*, —— U.S. ——, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990).

As a three-judge panel, we are bound by our prior decisions interpreting state as well as federal law in the absence of intervening controlling authority. *See United States v. Washington*, 872 F.2d 874, 880 (9th Cir.1989). The officers have cited to no intervening holding of the California Supreme Court concerning this issue. Nor are the intervening appellate court opinions they have cited at odds with

---

**2.** We rejected Davis' alternate argument that the three-year limitations period for fraud or mistake set forth in Cal.Civ.Proc.Code § 338(d) applied because (1) the breach of fiduciary duty alleged was not "based solely on fraud," and (2)

if two limitations provisions arguably apply, the longer of the two takes precedence. *Davis & Cox*, 751 F.2d at 1520 n. 3 (citing *Robuck*, 649 F.2d at 645 n. 2, and *Kornbau v. Evans*, 66 Cal.App.2d 677, 152 P.2d 651, 655 (1944)).

*Davis & Cox.*[3] *See Hatch v. Collins,* 225 Cal.App.3d 1104, 275 Cal.Rptr. 476, 480–81 (1990) (four-year statute of limitations governing breach of fiduciary duties does not apply to action against trustee in a deed of trust because such a trustee does not stand in a fiduciary relationship to the trustor); *Byrum v. Brand,* 219 Cal.App.3d 926, 268 Cal.Rptr. 609, 617 (1990) (liability statute governing investor's claim against investment consultant for failure to disclose own interest in transaction is California's constructive fraud statute; not addressing which statute of limitations applies); *David Welch Co. v. Erskine & Tulley,* 203 Cal. App.3d 884, 250 Cal.Rptr. 339, 344 (1988) ("[W]here a cause of action is based on a defendant's breach of its fiduciary duties, the four-year catchall statute set forth in Code of Civil Procedure section 343 applies."). Accordingly, we are not at liberty to reexamine the holding of *Davis & Cox,* whatever our uncertainty about its interpretation of California law.

The statute of limitations began to run anew when the FSLIC was appointed on April 10, 1987. *See* 12 U.S.C. § 1821(d)(14)(B) (Supp. II 1990). Thus the FDIC had four years from April 10, 1987, to file this action, and the complaint was timely filed on April 5, 1991. We therefore affirm the district court's ruling that the FDIC's claims are not time-barred.

## II. *Standard of Liability*

■ Section 212(k) of FIRREA, codified at 12 U.S.C. § 1821(k), provides:

A director or officer of an insured depository institution *may be held personally liable* for monetary damages in any civil action by [the FDIC under FIRREA]

. . . .

*for gross negligence,* including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. *Nothing in this paragraph shall impair or affect any right of the [FDIC] under other applicable law.*

12 U.S.C. § 1821(k) (Supp. II 1990) (emphasis added).

The officers contend that they cannot be held liable for simple negligence in the performance of their duties because FIRREA established gross negligence as a national uniform standard of liability, preempting state remedies predicated on a lesser degree of fault. The FDIC, on the other hand, interprets § 1821(k) as merely allowing gross negligence claims in the face of contrary state law. The FDIC thus argues that the federal preemption of state law is limited, pointing to the provision's final sentence as a savings clause preserving the FDIC's right to bring claims alleging a lesser degree of fault than gross

---

3. Our own research has uncovered a potentially dispositive recent appellate court case, *Smith v. Superior Court,* 217 Cal.App.3d 950, 266 Cal. Rptr. 253 (1990). There the appellate court held that where the suit is against a fiduciary acting in the capacity of a voting director, the applicable limitations period is three years. *Smith* involved a suit by a homeowners' association against the former president of the board, alleging negligence and breach of fiduciary duties for the board's failure to file suit for latent construction defects in the plaintiffs' homes. The court noted that corporate directors' fiduciary duties are governed by Cal.Corp.Code § 309, which codifies the common law business judgment rule. Therefore it concluded that the applicable limitations period was Cal.Civ.Proc. Code § 359, which sets a three-year limitations period for claims against corporate directors "to enforce a liability created by law." *Id.* 266 Cal.Rptr. at 255 (quoting Cal.Civ.Proc.Code § 359 (West 1982)). The officers have argued persuasively that the *Smith* court's decision conflicts with settled California law on the question of when a liability is created by law. *See Jackson v. Cedars–Sinai Medical Ctr.,* 220 Cal.App.3d 1315, 269 Cal.Rptr. 877, 880 (1990) (liability is not created by statute where legislature has simply given statutory recognition to the liability that existed before enactment of statute (citing 3 B.E. Witkin, *California Procedure* § 457 (3d ed. 1985))). Therefore we agree with the officers that the *Smith* holding is unlikely to be adopted by the California Supreme Court, and thus is not controlling here. *See, e.g., Ogden Martin Sys. v. San Bernardino County,* 932 F.2d 1284, 1288–89 (9th Cir.1991) (federal courts are not obliged to follow intermediate state appellate decisions when "convinced by other persuasive data that the highest court of the state would decide otherwise" (quoting *West v. American Tel. & Tel. Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940))).

negligence where state law authorizes such claims. This is a question of first impression in this circuit. We join the only other circuit to consider the issue [4] in concluding that state law claims premised on lesser culpability are not preempted by FIRREA.[5] See *FDIC v. Canfield,* 967 F.2d 443 (10th Cir.1992) (en banc). Our conclusion is compelled by the text of the statute and is supported by its legislative history.[6]

 Our goal in construing a statute is to ascertain the intent of Congress in order to give effect to its legislative will. *See Dole v. United Steelworkers of America,* 494 U.S. 26, 35, 110 S.Ct. 929, 934, 108 L.Ed.2d 23 (1990). In doing so, we begin with the language of the statute itself, looking not only to the disputed provision, but also "to the provisions of the whole law, and to its object and policy." *Id.* (quoting *Massachusetts v. Morash,* 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1989)). The purposes of FIRREA, as expressed by Congress in the statute's opening provision, include *"strengthen[ing] the enforcement powers* of Federal regulators of depository institutions" and *"strengthen[ing] the civil sanctions* and criminal penalties for defrauding or otherwise damaging depository institutions and their depositors." Pub.L. No. 101–73, § 101(9), (10), 103 Stat. 183, 187 (1989) (emphasis added) (*reprinted in* 12 U.S.C. § 1811 note (Supp. II 1990) (Purposes of 1989 Amendment)). Our construction of § 1821(k) must accord with this statement

of general congressional intent. We construe the statutory language according to its plain meaning. *Haynes v. United States,* 891 F.2d 235, 239 (9th Cir.1989); *see Kaiser Aluminum & Chem. Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570, 1576, 108 L.Ed.2d 842 (1990) (statute's language is conclusive absent a clearly expressed legislative intention to the contrary).

The first sentence of § 1821(k) authorizes the FDIC to bring claims alleging gross negligence as a matter of federal law. The officers read this sentence not only as an authorization, but also as a limitation on the types of claims that the FDIC may pursue. The plain language, which uses the word "may," contradicts this interpretation. Had Congress intended this authorizing provision to limit the FDIC to claims alleging gross negligence or greater culpability, it would have inserted the word "only" in the sentence. We may not torture the language chosen by Congress to infer such a meaning. *See Rose v. Rose,* 481 U.S. 619, 627–28, 107 S.Ct. 2029, 2034–35, 95 L.Ed.2d 599 (1987) (Congress' use of word "may" in authorizing action by federal agency does not imply exclusivity and does not imply preemption of state law); *Resolution Trust Corp. v. Lightfoot,* 938 F.2d 65, 66–67 (7th Cir.1991) ("may" does not, on its face, mean "may only"); *McSweeney,* 772 F.Supp. at 1158 (standard norms of statutory construction prohibit court from implying exclusivity

---

**4.** The directors argue that the decision of the Sixth Circuit in *Gaff v. FDIC,* 919 F.2d 384, 390–91 (6th Cir.1990), *modified on other grounds,* 933 F.2d 400 (6th Cir.1991), runs counter to the interpretation we adopt here. The issue in *Gaff,* however, was whether federal law preempted state law with regard to the ownership and priority of stockholders' claims against an insolvent bank or its officers and directors after the FDIC has taken over the bank. In holding that federal law controlled, the court opined that § 1821(k) supported its view that "the liability of officers and directors of a bank are determined under federal law." *Id.* at 391. Because the interpretation of § 1821(k) was not at issue in *Gaff,* and because the Sixth Circuit did not address the standard of care applicable under federal law, its discussion of § 1821(k) was dictum, and we do not regard the Sixth Circuit as having considered the issue before us.

**5.** The lower courts are split on the question of the FDIC's ability to proceed against officers and directors for simple negligence under state law. The majority, however, agree with the FDIC that § 1821(k) does not preempt state law allowing such claims. *See Canfield,* 967 F.2d at 446 n. 3 (listing cases).

**6.** For a comprehensive study of the relevant legislative history and an exposition of the many arguments on both sides of the issue we decide today, see David B. Fischer, Comment, *Bank Director Liability Under FIRREA: A New Defense for Directors and Officers of Insolvent Depository Institutions—or a Tighter Noose?,* 39 UCLA L.Rev. 1703 (1992).

when Congress has not used exclusive language).

Our construction of the opening sentence of § 1821(k) as a non-limiting authorization is buttressed by the section's closing sentence, which preserves the FDIC's rights to proceed against thrift officials under "other applicable law." The officers contend that state law authorizing claims premised on simple negligence is not "applicable law." We disagree. Like the *Canfield* court, we find no limitation in this language that would preclude the FDIC from seeking remedies available under state law. *Canfield*, 967 F.2d at 446 ("*[A]ny* other law providing that an officer or director may be held liable for simple negligence ... would be an 'other applicable law.'" (emphasis added)). We have declined to read similar authorizing legislation to limit remedies available to federal banking regulators to those expressly authorized by federal law. *See Reich v. Webb*, 336 F.2d 153, 158 (9th Cir.1964), *cert. denied*, 380 U.S. 915, 85 S.Ct. 890, 13 L.Ed.2d 800 (1965). In *Reich*, we read federal banking legislation that authorized federal regulators to enforce the statute's provisions or "any other law" as authorizing as well the enforcement of "common law fiduciary responsibilities ... through appropriate court action. To hold otherwise would render the language 'or any other law' mere surplusage." *Id.*

■ Under California statutory and common law, shareholders and corporations have an established right to sue corporate directors and officers for negligent breach of the duty of care. *See* Cal.Corp.Code § 309 (West 1990); *Smith v. Superior Court*, 217 Cal.App.3d 950, 266 Cal.Rptr. 253, 254–55 (1990) (negligence liability predicated on Cal.Corp.Code § 309); *Burt v. Irvine Co.*, 237 Cal.App.2d 828, 47 Cal. Rptr. 392, 416 (1965) (common law liability for negligence). Before the enactment of FIRREA, courts addressing whether such state law applies to similar claims against former officials of federally insured financial institutions reached differing results. Those who declared that federal law must govern such claims, however, fashioned federal common law recognizing a negligence standard of liability. *See, e.g., Federal Sav. & Loan Ins. Corp. v. Kidwell*, 716 F.Supp. 1315, 1317 (N.D.Cal.1989) (breach of fiduciary duty claims are governed by federal common law which employs same reasonableness standard as state law), *vacated in part on other grounds sub nom. Eureka Fed. Sav. & Loan Ass'n v. Kidwell*, 937 F.2d 612 (9th Cir.1991). Thus, whether we characterize the "applicable law" authorizing such claims as federal common law or state law is beside the point.[7] Under FIRREA, the FDIC stands in the shoes of the failed financial institution and its stockholders for purposes of pursuing claims against the institution's officials. *Canfield*, 967 F.2d at 446; *see* 12 U.S.C. § 1821(d)(2) (Supp. II 1990). Accordingly, its rights to proceed against the officers for negligent breach of the duty of care, whether under state or federal common law, are preserved by the plain language of the last sentence of § 1821(k).

■ We do not agree with the officers that "other applicable law" refers simply to FIRREA and that had Congress intended to preserve the FDIC's rights to seek remedies under state law it would have said so explicitly. The presumption runs the other way. Absent a clear congressional statement, preexisting statutory or common law rights or defenses are not displaced by federal enactment. *See Norfolk Redev. & Hous. Auth. v. Chesapeake & Potomac Tel. Co.*, 464 U.S. 30, 35, 104 S.Ct. 304, 307, 78 L.Ed.2d 29 (1983). Judicially construing an implied loss of existing remedies is particularly inappropriate when applied to the rights of the government. *See, e.g., Hollinger v. Titan Capital Corp.*,

---

**7.** We find meritless the officers' reasoning that because claims against thrift officials were governed by federal common law before FIRREA's enactment, FIRREA completely supplanted the common law with statutory law, thus preempting such claims. Even if we were to embrace the proposition that federal common law governed, the express saving language preserving the FDIC's rights "under other applicable law" would preserve its preexisting rights under the federal common law.

914 F.2d 1564, 1576–78 (9th Cir.1990) (Securities Exchange Act imposing secondary liability for violations of Act does not supplant common law liability), *cert. denied,* — U.S. ——, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991). Moreover, the pattern of usage throughout FIRREA indicates that when the statute refers only to a specific law, it does so explicitly. *See Canfield,* 967 F.2d at 447. In contrast, the savings clause of § 1821(k) refers without qualification to other laws that are "applicable."

The officers argue that an important purpose of federal banking regulation is national uniformity of standards governing the operation of federally insured financial institutions. From this generally accepted principle, they imply in FIRREA the purpose of setting a uniform standard of liability for officials of such institutions. They then reason that state law allowing a lesser standard of liability conflicts with this purpose of national uniformity and thus is preempted. We disagree. Nowhere does FIRREA indicate an aim to create national uniformity in liability standards. Notably, § 1821(k) incorporates state definitions of gross negligence and intentional tortious conduct, which vary from state to state. Thus the statute itself belies the officers' attempt to infer an intent to create such a uniform liability standard.[8] *See Canfield,* 967 F.2d at 447.

In sum, it is evident from the articulated purpose of FIRREA and the language of § 1821(k) that Congress did not intend to preclude the FDIC from bringing actions premised on negligent breach of the duty of care when authorized under state law. In addition, we find unpersuasive the officers' claim that there is a "clearly expressed legislative intention [to the] contrary." *See INS v. Cardoza–Fonseca,* 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987). The officers rely on a statement in the House Conference Report that § 1821(k) "preempts State law with respect to claims brought by the FDIC in any capacity against officers or directors of an insured depository institution. The preemption allows the FDIC to pursue claims for gross negligence or any conduct that demonstrates a greater disregard of a duty of care, including intentional tortious conduct." H.R.Rep. No. 222, 101st Cong., 1st Sess. 393, 398, *reprinted in* 1989 U.S.C.C.A.N. 86, 432, 437. This statement is not the kind of clear statement of contrary intent that would allow us to disregard the plain language of FIRREA. The Conference Report addresses only the preemptive aspect of § 1821(k) and does not address the savings clause. It simply contains a statement allowing the FDIC in the face of contrary state law to pursue claims of gross negligence or greater fault.

FIRREA was enacted at a time when numerous state legislatures had moved to insulate corporate officers and directors from liability. From 1986 to 1988, the period immediately preceding FIRREA's enactment, over thirty states had amended their corporation statutes "to permit individual corporations to opt out of liability for duty of care violations." Douglas M. Branson, *Assault on Another Citadel: Attempts To Curtail the Fiduciary Standard of Loyalty Applicable to Corporate Directors,* 57 Fordham L.Rev. 375, 376 & n. 7 (1988); *see also Canfield,* 967 F.2d at 445 n. 2 (discussing representative statutes). Section 1821(k) preempts these state laws to the extent that they insulate officers and directors from liability for gross negligence, because such laws directly conflict with its

---

8. Our decision in *Home Sav. Bank v. Gillam,* 952 F.2d 1152 (9th Cir.1991), is not to the contrary. In *Gillam,* we rejected the defendant's argument that § 1821(k)'s heightened liability standard precluded the Resolution Trust Corporation ("RTC") from suing him to recover the generous severance benefits he had received upon his resignation from a failed thrift. We interpreted the savings clause contained in the final sentence of § 1821(k) to allow the RTC to bring such an action for restitution under 12 U.S.C. § 1818(b)(6)(A) because the phrase "other applicable laws must, *at a minimum,* include other types of legal actions permitted by the Federal Deposit Insurance Act." *Id.* at 1161 (emphasis added). We had no occasion in *Gillam* to consider whether state laws allowing claims for breach of fiduciary duty or negligence also come under the heading of "other applicable law." Any inference in *Gillam* as to the preemptive effect of § 1821(k) on such claims would be dictum.

grant of authority. *See Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941) (state law is preempted where it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress"). In these states, § 1821(k) furthers FIRREA's purpose by strengthening the FDIC's enforcement powers and the civil sanctions available to it.

Moreover, the legislative history as a whole contradicts the officers' claim of total preemptive intent and reinforces our reading of § 1821(k) as having only a limited preemptive effect. The evolution of § 1821(k) from preliminary to final form was toward *less* preemption of state law, rather than *more.* The original bill included a federal negligence liability standard, and would have preempted state law shielding corporate officers and directors from negligence liability. *See* S. 774, 101st Cong., 1st Sess. § 214(n)(1) (Apr. 13, 1989). The "managers' amendment" omitted the negligence standard and scaled back the preemption. In commenting on the amendment, Senator Riegle, the sponsor of FIRREA, stated:

> In recent years, many States have enacted legislation that protects directors or officers of companies from damage suits.... For example, in Indiana, a director or officer is liable for damages only if his conduct constitutes "willful misconduct or recklessness."
>
> The reported bill totally preempted State law in this area with respect to suits brought by the FDIC against bank directors or officers. However, in light of the State law implications raised by this provision, the managers' amendment *scales back the scope of this preemption.*
>
> Under the managers' amendment, *State law would be overruled only to the extent that it forbids the FDIC to bring*

suit based on *"gross negligence"* or an *"intentional tort."*

135 Cong.Rec. S4278–79 (daily ed. April 19, 1989) (emphasis added). The "manager's amendment" was passed by the Senate that day, and is substantially the same as the version of § 1821(k) eventually adopted by the Joint Committee.[9] In addition, the Senate Report on the bill, which was introduced prior to FIRREA's final enactment on August 9, 1989, states that § 1821(k) "enables the FDIC to pursue claims ... for gross negligence (or negligent conduct) that demonstrates a greater disregard of a duty of care than gross negligence ... [and] supersedes State law limitations that ... would bar or impede such claims. *[It] does not prevent the FDIC from pursuing claims under State law or under other applicable Federal law* ... for violating a lower standard of care, such as simple negligence...." S.Rep. No. 19, 101st Cong., 1st Sess. 318 (1989), *reprinted in* 135 Cong.Rec. § 6907, § 6912 (daily ed. June 19, 1989) (emphasis added). At the least, therefore, the legislative history is inconclusive; it is in any event devoid of a clear expression of intent contrary to the plain language of FIRREA.

Finally, we agree with the district court that adopting the officers' interpretation of § 1821(k) would lead to absurd results, creating "the perverse incentive for a director in an institution that is having financial difficulty to permit the thrift to fall into ruin ... since the director's own exposure would be greatly reduced upon the institution of a receivership." *McSweeney,* 772 F.Supp. at 1159. Before the failure of a thrift and the involvement of federal regulators, liability would attach for simple negligence. After failure, however, § 1821(k) as interpreted by the officers would preclude negligence liability. We refuse to adopt a construction of FIRREA that "would indirectly encourage" officials to hasten the demise of a troubled thrift, con-

**9.** In addition to several minor technical changes, the only difference in this version of § 1821(k) and the version finally enacted is in the wording of the savings clause. The Senate's savings clause, which preserved the FDIC's rights as they "existed immediately prior to the enactment of the FIRRE Act," was replaced with "Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law." We see nothing in this change to indicate an intent to expand the preemptive effect of this provision.

trary to the stated intent of Congress " 'to curtail ... activities of savings associations that pose unacceptable risks to the Federal deposit insurance funds.' " *Canfield*, 967 F.2d at 449 (quoting Pub.L. No. 101–73, § 101(3), 103 Stat. 183, 187 (1989)).

We hold that the plain language of FIR-REA allows the FDIC to bring claims against former officials of failed financial institutions premised on a lesser degree of culpability than gross negligence, where authorized under state law. We therefore affirm the district court's denial of the officers' motion to dismiss.

AFFIRMED.