MANSMANN, Circuit Judge,
concurring in part and dissenting in part.
I concur in the majority’s holding that section 1821(k) of the Financial Institutions, Reform, Recovery and Enforcement Act of 1989 (“FIRREA”), 12 U.S.C. § 1821(k), does not preempt claims for simple negligence or breach of fiduciary duty that may be available to the RTC under state law. I respectfully dissent, however, from Part IV of the opinion, where the majority holds that section 1821(k) does not supplant the RTC’s ability to bring such actions under federal common law. I find the majority’s conclusion contrary to the statute’s language and legislative history. I believe that section 1821(k) establishes a gross negligence standard of liability in suits brought by the RTC against the directors and officers of federally-chartered insured depository institutions, and accordingly would hold, as our sister courts of appeals in the Fifth, Sixth, Seventh and Tenth Circuits have held,[1] that the federal common law standard of simple negligence [2] must yield to section 1821(k)’s higher standard in such cases.
My analysis is guided throughout by the vastly different tests the Supreme Court has
*1250 instructed us to use when deciding whether a federal statute supplants federal common law on the one hand, or preempts state law on the other. When considering state law preemption, “ “we start with the assumption that the historic police powers of the States are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress’”. Milwaukee v. Illinois, 451 U.S. 304, 316, 101 S.Ct. 1784, 1792, 68 L.Ed.2d 114 (1981) (citations omitted). By contrast, when the question is whether federal statutory or federal common law governs, “ Ve start with the assumption’ that it is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of law.” Id. at 317, 101 S.Ct. at 1792 (footnote omitted). Federal common law is a ‘“necessary expedient’”, resorted to in the absence of a federal statute and is “ ‘subject to the paramount authority of Congress.’” Id. at 313-14, 101 S.Ct. at 1791 (citations omitted). Although a statute will not invade well established principles of common law unless a statutory purpose to the contrary is present, United States v. Texas, — U.S. -, -, 113 S.Ct. 1631, 1634, 123 L.Ed.2d 245 (1993), when Congress “speak[s] directly” to the question addressed by the common law, federal common law is supplanted. Id.; Milwaukee v. Illinois, 451 U.S. at 315, 101 S.Ct. at 1791-92. Moreover, it is not necessary for Congress to “affirmatively proscribe” the federal common law rule in order to abrogate its application. Id.
I.
All questions of statutory interpretation start with the language of the statute itself, and “[a]bsent a clearly expressed legislative intent to the contrary, ‘that language must ordinarily be regarded as conclusive.’ ” Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 835, 110 S.Ct. 1570, 1575, 108 L.Ed.2d 842 (1990), quoting, Consumer Product Safety Comm’n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).
Section 1821(k) has two parts: a substantive provision and a savings clause. In the first sentence, section 1821(k) provides that “[a] director or officer of an insured depository institution may be held personally liable in any civil action by[ ] ... the [RTC] ... for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care ... as such terms are defined and determined under applicable State law[]”; and in the second sentence, saves “any right of the [RTC] under other applicable law”.[3] Under FIRREA, “the term ‘insured depository institution’ means any bank or savings association the deposits of which are insured by the [Federal Deposit Insurance] Corporation pursuant to this chapter.” 12 U.S.C. § 1813(c)(2) (emphasis added). Thus, that Congress has spoken directly in section 1821(k)’s substantive provision to the standard of liability for the directors and officers of all failed federally-insured depository institutions, including those with a federal charter is, I believe, not open to question.
I also do not share the majority’s confidence in the clarity of the savings clause.[4] Beginning its analysis by inquiring whether *1251 any terms of section 1821(k) “ ‘explicitly pre-serv[e] or preempt[] judge-made law[]’”, the majority “read[s] the plain meaning of th[e] savings clause as preserving the RTC’s right to proceed against directors and officers of federally-chartered institutions under federal common law.” Majority Op. at 1245. This interpretation of the savings clause, however, has been rejected by our sister courts as contrary to elementary canons of statutory construction. They have concluded that if the savings clause were construed to preserve federal common law actions for simple negligence, then the language of the substantive sentence of section 1821(k) which specifically enunciates a cause of action for gross negligence would be meaningless sur-plusage and rendered a nullity. I agree. FDIC v. Bates, 42 F.3d 369, 372 (6th Cir.1994); RTC v. Miramon, 22 F.3d 1357, 1361-62 (5th Cir.1994); RTC v. Gallagher, 10 F.3d 416, 420 (7th Cir.1993). See RTC v. Frates, 52 F.3d 295, 297 (10th Cir.1995). (“[W]e believe Gallagher, Miramon, and Bates have correctly resolved the [federal common law displacement] issue ... and we see no reason to depart from or add to the analysis-”).
To avoid this dilemma, the majority informs us that section 1821(k) does not address the liability of directors and officers of federally-chartered depository institutions in RTC actions and was enacted only to preempt state insulating statutes. I have difficulty comprehending how section 1821(k) can preserve the RTC’s right to sue the directors and officers of federal financial institutions for simple negligence under federal common law, and at the same time, not address the liability of these individuals in RTC actions. The majority cannot have it both ways; either section 1821(k) addresses the issue or it does not.[5]
The majority’s position that section 1821(k)’s “intended realm” is limited to state chartered depository institutions, Majority Op. at 1249, flies in the face of FIRREA’s applicable definitional provisions. As noted, section 1821(k) covers directors and officers of “insured depository institution[s]”, an all-inclusive term as defined in 21 U.S.C. § 1813(c)(2). Subsections 1813(c)(4) and (5), on the other hand, distinguish between and define respectively “Federal depository institution[s]” and “State depository institution[s]”.[6] If section 1821(k) was intended to apply only to state institutions, Congress would have referred in the statute to insured “State depository institution[s]”. Indeed, when Congress sought to restrict the application of section 1821’s subsections to state institutions, it did so explicitly by using the appropriate term. E.g., 12 U.S.C. § 1821(c)(3)(A) (“Whenever the authority having supervision of any insured State depository institution ... appoints a conservator ... the Corporation may accept such appointment.”) (emphasis added).
Moreover, the majority’s position that section 1821(k)’s scope is limited to state institutions is premised on what I believe to be an erroneous interpretation of the statute. The majority states that since “gross negligence” does not have a “generally accepted meaning”, Majority Op. at 1246, had Congress intended to speak directly to the standard of liability for directors and officers of federally chartered institutions it would have clarified which formulation of gross negligence applies *1252 in such cases.[7] In addition, the majority concludes that a federal statutory gross negligence standard and section 1821(k)’s reference in the first sentence to “applicable State law” cannot co-exist. I do not find them mutually exclusive, and read the statute as directing the courts to define “gross negligence” in cases involving failed federal depository institutions by the state law that has the closest connection to the institution at issue. Congress has, at various times and in various contexts, enacted statutes which rely upon state laws of decision in an overall federal statutory scheme. In re TMI Litigation Cases Consol. II, 940 F.2d 832, 855 (3d Cir.1991), cert. denied, 503 U.S. 906, 112 S.Ct. 1262, 117 L.Ed.2d 491 (1992).[8] Concepts of negligence fall squarely within the province of the state courts and the conduct that rises to the level of gross negligence may vary from place to place. Thus, a direction from Congress to look for guidance to the law of the locality in which a federally chartered depository institution is based represents a sensible and reasonable way to determine the parameters of the gross negligence liability standard in any given case.
I therefore read the plain meaning of section 1821(k) as “speaking directly” to the standard of liability applicable in suits brought by the RTC against the directors and officers of federally chartered insured depository institutions, and setting it at gross negligence.
II.
When I look for legislative history that contradicts section 1821(k)’s plain meaning as I see it, I find none; and in fact, I find legislative history showing that Congress had before it several competing concerns when enacting section 1821(k) which it resolved in favor of a gross negligence liability standard.
Congress was aware that a number of states had enacted legislation that shields directors and officers from liability except for reckless or willful breaches of duty in order to persuade capable individuals to accept corporate directorships. Finding an intentional tort standard of liability unacceptably high, Congress enacted section 1821(k) with at least the purpose in mind to preempt state insulating statutes. RTC v. Miramon, 22 F.3d 1357, 1363 n. 9 (5th Cir.1994). At the same time, however, Congress was not prepared to displace all state law. Thus, the evolution of section 1821(k) from preliminary to final form was toward less preemption, FDIC v. McSweeney, 976 F.2d 532, 540 (9th Cir.1992), cert. denied, — U.S. -, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993), with Congress ultimately leaving it, through the savings clause, to each state to decide whether a simple negligence standard is appropriate within its own borders.[9]
*1253 While Congress sought to set a standard of liability in section 1821(k) that provided federal regulators with adequate enforcement power, Pub.L. No. 101-73, § 101(9)-(10), 103 Stat. 183, 187 (1989), it also understood the importance of attracting qualified persons to serve as officers and directors of financial institutions.[10] RTC v. Gallagher, 10 F.3d 416, 422 (7th Cir.1993). Accordingly, the standard of liability to be included in the statute — simple or gross negligence — was a matter of debate. While the Senate’s initial bill would have allowed the RTC to bring claims “for any cause of action available at common law, including but not limited to, negligence, gross negligence, willful misconduct, breach of fiduciary duty-”, S.774, § 214(n), 101st Cong., 1st Sess. at 105-106 (calendar N. 45, April 13, 1989), its amended version removed, inter alia, all references to a simple negligence standard:
[A director or officer of an insured financial institution may be held personally liable] for gross negligence, or intentional conduct, as those terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right, if any, of the [FDIC] that may have existed immediately prior to the enactment of the [FIRREA] Act.
135 Cong.Rec. S4452 (daily ed. April 19, 1989).[11]
Commenting in favor of the amended bill, Senator Sanford unmistakenly articulated Congress’ intent to establish a standard of *1254 liability of gross negligence in section 1821(k) and clarified that the standard Congress enacted for actions brought under the statute was not intended for other cases:
While I fundamentally believe that issues of corporate governance and the standard of care to which corporate officers and directors should be held are matters of State law, not Fed[e]ral law the preemp- • tion of State law permitted by this bill is limited solely to those institutions that have Federal deposit insurance and to those cases in which the directors of officers have committed intentional torts or acts of gross negligence. As such, the establishment of a federal standard of care is based on the overriding Federal interest in protecting the soundness of the Federal Deposit Insurance Corporation fund and is very limited in scope. It is not a wholesale preemption of longstanding principles of corporate governance, nor does it represent a major step in the direction of establishing Federal tort standards or Federal standards of care of corporate officers and directors.
Id. at S4264-65.[12]
The House version of section 1821(k), passed after the Senate version, H.R. 1278, 101st Cong., 1st Sess., 135 Cong.Rec. H2602 (daily ed. June 15,1989), and the version that was ultimately voted into law, preserved the Senate’s removal of the simple negligence standard. See Pub.L. No. 101-73, 103 Stat. 183 (Aug. 9, 1989), reprinted in 1989 U.S.C.C.A.N. 86. The House-Senate Conference Report which represents the final statement of terms agreed upon by both Houses of Congress confirms that Congress decided upon a gross negligence standard for section 1821(k):
Title II preempts State law with respect to claims brought by the FDIC in any capacity against officers or directors of an insured depository institution. The preemption allows the FDIC to pursue claims for gross negligence or any conduct that demonstrates a greater disregard of a duty of care, including intentional tortious conduct.
H.R.Conf.Rep. No. 222,101st Cong. 1st Sess. 393, 398 (1989), reprinted in 1989 U.S.C.C.A.N. 432, 437.
Events which occurred after the statute’s enactment also confirm that Congress established a standard of liability greater than simple negligence in section 1821(k). I recognize that post-enactment legislative history is not as weighty as legislative history that is contemporaneous with a statute’s passage, but as the Supreme Court has instructed, I would “be remiss” to ignore it. Cannon v. University of Chicago, 441 U.S. 677, 687 n. 7, 99 S.Ct. 1946, 1952 n. 7, 60 L.Ed.2d 560 (1979). There were two unsuccessful efforts to amend section 1821(k) to include a simple negligence standard of liability, one by the FDIC,[13] and the other by Congressman Baker of Louisiana.[14] Gallagher, 10 F.3d at 423. *1255 Only the presence of a gross negligence standard in section 1821(k) would have precipitated these attempts to reintroduce simple negligence as a standard in the statute. Further, had Congress preserved the federal common law standard in section 1821(k), as the majority contends, these amendments would not have been necessary.
Finally, the public policy consideration the majority raises regarding the “perverse incentive” that would be created if the pre-receivership liability standard is simple negligence and the post-receivership standard is higher, Majority Op. at 30, may be more imagined than real. I have no reason to believe that the directors and officers of federal depository institutions will allow their institutions to fail in order to take advantage of section 1821(k)’s gross negligence standard. If, however, the statute has this result, it flows from the statute as written, which is for Congress to correct. FMC Corp. v. U.S. Dep’t of Commerce, 29 F.3d 833, 846 (3d Cir.1994) (declining to amend CERCLA by “judicial flat”).
III.
In my judgment, the only reading of section 1821(k) consistent with its plain meaning and its legislative history is that the statute “speaks directly” to the standard of liability applicable to the directors and officers of state and federal federally-insured depository institutions in RTC actions. I must, therefore, conclude that the federal common law in this area is supplanted. Milwaukee v. Illinois, 451 U.S. 304, 313-16, 101 S.Ct. 1784, 1790-92, 68 L.Ed.2d 114 (1981).

. RTC v. Frates, 52 F.3d 295 (10th Cir.1995); FDIC v. Bates, 42 F.3d 369 (6th Cir.1994); RTC v. Miramon, 22 F.3d 1357 (5th Cir.1994); RTC v. Gallagher, 10 F.3d 416 (7th Cir.1993).

. The majority does not decide what standard of liability controls under the federal common law. Nevertheless, it strongly suggests in footnote 16 that it is one of ordinary (or simple) negligence and discusses the question before us as if the *1250 federal common law would permit the RTC to sue the directors and officers of failed federally chartered insured depository institutions for simple negligence.

. Section 1821 (k) provides in pertinent part:
(k) Liability of directors and officers
A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation ... for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.
12 U.S.C. § 1821(k).

. I could not discern the meaning of the savings clause without reference to section 1821(k)’s legislative history. In my view, the savings clause ensures that even though state insulating statutes are preempted, state law which imposes a higher standard than section 1821(k)’s gross negligence liability standard, holding directors and officers liable for simple negligence, remains available to the RTC. See infra p. 1252.

. I would also disagree with the view that the substantive sentence of section 1821(k) speaks only to RTC actions against the directors and officers of state institutions and the savings clause speaks to RTC actions against the directors and officers of both state and federal institutions. Neither the statute's language nor its legislative history indicates that Congress restricted the subject matter of section 1821(k)'s first sentence to state institutions, then expanded it to include state and federal institutions in the second. Further, if section 1821(k)'s substantive provision only concerns state insulating statutes, federal common law need not be "preserved”. Finally, "other applicable law” in the savings clause cannot refer to federal common law if the substantive provision relates only to actions involving state institutions, because federal common law does not have a place in such actions.

. Subsections 1813(c)(4) and (5) provide:
(4) Federal depository institution
The term “Federal depository institution” means any national bank, any Federal savings association, and any Federal branch.
(5) State depository institution
The term "State depository institution” means any State bank, any State savings association, and any insured branch which is not a Federal branch.
21 U.S.C. § 1813(c)(4), (5).

. In making this point, the majority cites FDIC v. McSweeney, 976 F.2d 532, 539 (9th Cir.1992), cert. denied, - U.S. -, 113 S.Ct. 2440, 124 L.Ed.2d 658 (1993), and FDIC v. Canfield, 967 F.2d 443, 447 (10th Cir.1992). In these cases, the courts concluded that section 1821 (k) does not preempt state law claims for simple negligence, viewing the statute's reliance on state law for the definition of gross negligence as directly refuting the proposition that FIRREA establishes a uniform, national standard of gross negligence liability. Id.
Since its decision in Canfield, the Court of Appeals for the Tenth Circuit has held that section 1821(k) supplants federal common law. RTC v. Frates, 52 F.3d 295 (10th Cir.1995).

. Examples of federal statutes that explicitly authorize the use of state law include: the Price-Anderson Amendments Act of 1988, 42 U.S.C. § 2014(hh) (the “substantive rules for decision" in public liability actions “shall be derived from” the law of the state in which the nuclear incident occurs); the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (the law of the place where the act or omission occurred determines the liability of the United States); 16 U.S.C. § 457 (claims for death or personal injury within a federal enclave are governed by laws of the state); the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(2)(A) (the civil and criminal laws of each adjacent state are the law of the United States regarding the Outer Continental Shelf's subsoil and seabed). At times, the use of state law in a federal scheme is a matter of congressional intent. See, e.g., Reconstruction Finance Corp. v. Beaver County, 328 U.S. 204, 66 S.Ct. 992, 90 L.Ed. 1172 (1946) (Congress intended that state law define “real property” for tax purposes under the Reconstruction Finance Corporation Act.).

. During the floor debate in the Senate on the managers' amendment to the Senate's original bill, Senator Riegle, the bill’s sponsor, explained that the amended bill sought to limit the preemptive scope of section 182 l(k) to state insulating statutes. See Majority Op. at 1240-41.

. The remarks of Senator Sanford during the floor debate on the managers' amendment indicate that Congress was concerned that financial institutions be able to attract competent management:
Mr. President, I would like to thank the distinguished managers of the bill, Senator RIEGLE and Senator GARN, for including in the managers' amendment modifications to the bill regarding directors and officers liability insurance contracts, surety bonds, and financial institution bond contracts, and provisions relating to State laws affecting the liability of officers and directors of financial institutions.
I believe that these changes are essential if we are to attract qualified officers and directors to serve in our financial institutions.
135 Cong.Rec. S4276-77 (daily ed. April 19, 1989).
During this same debate, Senator Heflin noted the need for changes in the Senate bill to "ensure that financial institutions are able to attract strong and capable individuals as directors and officers! ]”, and Senator Riegle agreed. Id. at S4264-65. Although Senator Heflin’s comments were made in connection with modifications to FIRREA's “standard for imposition of civil penalties” provision, now codified at 12 U.S.C. § 1818(i)(2), I, unlike the majority, believe that the Senator's statements further our understanding of section 1821(k). The Supreme Court has counseled that " '[t]he true meaning of a single section of a statute ..., however precise its language, cannot be ascertained if it be considered apart from related sections Commissioner v. Engle, 464 U.S. 206, 223, 104 S.Ct. 597, 607, 78 L.Ed.2d 420 (1984), quoting Helvering v. Morgan's, Inc., 293 U.S. 121, 126, 55 S.Ct. 60, 62, 79 L.Ed. 232 (1934). See also Richards v. United States, 369 U.S. 1, 11, 82 S.Ct. 585, 591-92, 7 L.Ed.2d 492 (1962) ("We believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act....").

. The majority relies exclusively on the following Senate Report as demonstrative of Congress' intent to "explicitly preserve[] any federal remedy for conduct violating a lower standard of care, such as simple negligence[]'\ Majority Op. at 1245:
[Section 1821(k) ] enables the FDIC to pursue claims against directors or officers of insured financial institutions for gross negligence (or negligent conduct that demonstrates a greater disregard of a duty of care than gross negligence) or for intentional tortious conduct. This right supersedes State law limitations that, if applicable, would bar or impede such claims. This subsection! ] does not prevent the FDIC from pursuing claims under State law or under other applicable Federal Law, if such law permits the officers or directors of a financial institution to be sued (1) for violating a lower standard of care, such as simple negligence, or (2) on an alternative theory such as breach of contract or breach of fiduciary duty....
S.Rep. No. 19, 101st Cong., 1st Sess., 135 Cong. Rec. 6912 (daily ed. June 19, 1989).
If this were the only item of legislative history before us, I would find the majority's position more persuasive. When I consider the Report in context, however, I do not believe it supports the majority's position. The Report was prepared by the Senate Banking Committee that drafted the Senate’s original bill. Due to the press of time, it was not placed .in the Congressional Record until two months after the Senate voted on and passed the amended bill. Id. at S6934. As noted, the original bill was modified substantially to delete references to simple negligence. I therefore question the Report's value. RTC v. Miramon, 22 F.3d 1357, 1362 (5th Cir.1994) (“Examination of all of the legislative history, and scrutiny of the sequence of events leading up to the bill’s passage, calls into question the conclusion of th[e] report.”).

. The majority also points to Senator Sanford’s comments for support. While the Senator's comments certainly demonstrate that section 1821(k) was not intended to set a universal standard of director and officer liability, I do not believe they support the view that Congress did not address the standard of liability to be used in this RTC action.
Further, I believe the Senator's comments cast doubt on the majority’s statement that "[ejven assuming that the proper characterization of preexisting federal common law standard (as one of negligence or gross negligence) is unclear, it seems quite unlikely that Congress would have intended to reformulate the post-receivership standard as gross negligence, while leaving the pre-receivership standard in a state of ambiguity.” Majority Op. at 1246. It appears that when enacting section 1821(k), Congress did not focus on the duty of care that directors and officers of financial institutions may owe their shareholders or third parties in pre-receivership situations or on duties of care in other areas.

. The FDIC amendment provided:
Nothing in this subsection shall impair or affect any right of the [RTC] under other applicable State or Federal law, including a right to hold such director or officer personally liable for negligence.
Miramon, 22 F.3d at 1363 n. 10.

. The Baker amendment provided:
Paragraph (1) shall not be construed as impairing or affecting any right of the ... [RTC] under any provision of applicable State or other Federal law, including any provision of common law or any law establishing the personal liability of any director or officer of an insured depository institution under any standard pursuant to such law.
H.R. 3435, 102nd Cong., 1st Sess. § 228 (Comm. Markup Oct. 18, 1991).