

1995 Decisions

6-23-1995

# RTC v Cityfed & Schuster

Precedential or Non-Precedential:

Docket 94-5307

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

## Recommended Citation

"RTC v Cityfed & Schuster" (1995). *1995 Decisions.* Paper 172.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/172

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 94-5307
_____

RESOLUTION TRUST CORPORATION, in its capacity as
receiver for CITY SAVINGS, F.S.B., and the
RESOLUTION TRUST CORPORATION, in its corporate capacity

v.

CITYFED FINANCIAL CORP.; RICHARD E. SIMMONS;
K. MICHAEL DEFREYTAS; JOHN W. ATHERTON, JR.;
GORDON E. ALLEN; ALFRED J. HEDDEN;
PETER R. KELLOGG; JOHN KEAN, JR.;
GILBERT G. ROESSNER; GEORGE E. MIKULA;
JAMES P. MCTERNAN; VICTOR A. PELSON;
MARSHALL M. CRISER

(Trenton New Jersey District Civil No. 92-cv-05261)

RESOLUTION TRUST CORPORATION, in its capacity as
receiver for CITY SAVINGS, F.S.B.

v.

JOHN W. ATHERTON, JR.; GORDON E. ALLEN;
ALFRED J. HEDDEN; PETER R. KELLOGG;
JOHN KEAN, JR.; GILBERT G. ROESSNER;
JAMES P. MCTERNAN

(Trenton New Jersey District Civil No. 93-cv-01811)

Resolution Trust Corporation, in its capacity
as Receiver for City Savings, F.S.B.,
Appellant in No. 94-5307

_____

NO. 94-5308
_____

RESOLUTION TRUST CORPORATION

v.

ALFRED J. SCHUSTER; THOMAS J. LYNAM; MARTIN R. SIEGEL;
RICHARD P. PEARLMAN; JOAN C. MOONAN,
individually and as Executrix of the Estate of Robert J. Moonan;
EUGENE J. ELIAS; GEORGE HURLEY; WILLIAM B. BRICK;
JAMES W. DWYER; HARRY H. JAEGER; JOHN R. HIPPLE;
JOHN C. LAURICELLA; LOUIS A. IATAROLA

(New Jersey District Civ. No. 93-cv-02560)

Martin R. Siegel, and Joan C. Moonan, as
Executrix of the Estate of Robert J. Moonan
and individually,
Appellants in No. 94-5308

_____

On Appeal From the United States District Court
For the District of New Jersey
D.C. Civ. Nos. 92-cv-05261, 93-cv-01811, 93-cv-02569

_____

Argued: November 8, 1994

Before: BECKER, MANSMANN, and ALITO,
Circuit Judges.

(Filed  June 23, 1995)


DAVID M. FITZGERALD, ESQUIRE (ARGUED)
APRIL A. BRESLAW, ESQUIRE
Resolution Trust Corporation
Litigation Division
801 17th Street, NW
H-10th Floor
Washington, DC  20434

GERALD A. LILOIA, ESQUIRE
GLENN D. CURVING, ESQUIRE
Riker, Danzig, Scherer, Hyland
        & Perretti
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ  07962

Attorneys for Resolution Trust Corporation, Appellant in No. 94-5307

RONALD W. STEVENS, ESQUIRE
(ARGUED)

Kirkpatrick & Lockhart
1800 M Street, N.W.
South Lobby, Suite 900
Washington, DC 20036

Attorney for Alfred J. Hedden, Jr., John W. Atherton, and Gilbert G. Roessner, Appellees in No. 94-5307

DOUGLAS M. KRAUS, ESQUIRE
Skadden, Arps, Slate, Meagher
        & Flom
919 Third Avenue
New York, NY 10022

BRUCE I. GOLDSTEIN, ESQUIRE
Saiber, Schlesinger, Satz
        & Goldstein
One Gateway Center, 13th Floor
Newark, NJ 07102

Attorneys for Gordon E. Allen, Marshall M. Criser, Peter R. Kellogg, and Victor A. Pelson, Appellees in No. 94-5307

JOHN F. COONEY, ESQUIRE
RONALD R. GLANCZ, ESQUIRE
WILLIAM D. COSTON, ESQUIRE
MELISSA LANDAU STEINMAN, ESQUIRE
Venable, Baetjer, Howard,
        & Civiletti
201 New York Avenue, NW, Suite 1000
Washington, DC 20005

LAURA V. STUDWELL, ESQUIRE
Orloff, Lowenbach, Stifelman,
        & Siegel
101 Eisenhower Parkway
Roseland, NJ 07068

Attorneys for John Kean, Jr.

Appellee in No. 94-5307


EDWARD J. DAUBER, ESQUIRE (ARGUED)
JEFFREY S. BERKOWITZ, ESQUIRE
Greenberg, Dauber & Epstein
A Professional Corporation
One Gateway Center, Suite 600
Newark, NJ  -7102-5311

Attorneys for Martin R. Siegel,
Appellant in No. 94-5308

J. SHANE CREAMER, ESQUIRE (ARGUED)
MAJORIE OBOD, ESQUIRE
Dilworth, Paxson, Kalish & Kauffman
3200 The Mellon Bank Center
Philadelphia, PA  19103

Attorneys for Joan C. Moonan,
individually and as Executrix of
the Estate of Robert J. Moonan,
Appellant in No. 94-5308

DANIEL KINBURN, ESQUIRE (ARGUED)
SUSAN L. HALL, ESQUIRE
Williams, Caliri, Miller & Otley
A Professional Corporation
1428 Route 23
Wayne, NJ  07474-0995

LLOYD S. MARKIND, ESQUIRE
MARGRET E. ANDERSON, ESQUIRE
Arnelle & Hastie
Woodland Falls Corporate Park
210 Lake Drive East, Suite 307
Cherry Hill, NJ  08002

Attorneys for Resolution Trust
Corporation, Appellee in No.
94-5308

FREDERIC J. SCHRAGGER, ESQUIRE
Law Offices of Frederic J. Schragger
3131 Princeton Pike, Building 1B
Lawrenceville, NJ  08648

Attorney for          Alfred J. Schuster,

Richard P. Pearlman, Eugene J. Elias, Harry H. Jaeger, Appellees in No. 94-5308

RUDOLPH A. SOCEY, JR., ESQUIRE
Lenox, Socey, Wilgus, Formidoni, & Casey
3131 Princeton Pike
Trenton, NJ 08648

Attorney for Thomas J. Lynam, Appellee in No. 94-5308

DANIEL J. GRAZIANO, ESQUIRE
Brotman & Graziano
3685 Quakerbridge Road
P.O. Box 3333
Trenton, NJ 08619

Attorney for James W. Dwyer, Appellee in No. 94-5308

STEPHEN W. ARMSTRONG, ESQUIRE
Montgomery, McCracken, Walker & Rhoads
Three Parkway, 20th Floor
Philadelphia, PA 19102

Attorney for John C. Lauricella, Appellee in No. 94-5308

_____

OPINION OF THE COURT

_____

BECKER, Circuit Judge.

In 1989, Congress enacted § 212(k) of the Financial Institutions, Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") (codified at 12 U.S.C.A. § 1821(k) (1989)), which provides:

> Liability of directors and officers. -- A director or officer of an insured depository institution _may_ be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation . . . acting as conservator or receiver of such institution . . . _for gross negligence_, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law. _Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law._

12 U.S.C.A. § 1821(k) (emphases added). These interlocutory appeals, brought pursuant to 28 U.S.C.A. § 1292(b) (1993), require us to address, with regard to this provision, two important questions of first impression in this circuit -- whether Congress, by its enactment of § 1821(k), (1) preempted state law, and/or (2) displaced federal common law actions that impose liability against directors and officers of insolvent federally insured depository institutions for conduct less culpable than gross negligence (e.g. for ordinary negligence).

Section 1821(k) was passed by Congress in response to the enactment by various states, during the middle and late 1980s, of lenient director liability statutes that generally provided directors with protection from gross negligence claims by limiting the grounds for liability to instances of reckless, willful and wanton boardroom misconduct. This section of FIRREA permits the Resolution Trust Corporation ("RTC") to seek recovery

for such directors' and officers' gross negligence, while preserving the RTC's rights under "other applicable law." The particular questions raised by these appeals relate to whether Congress intended its reference to "other applicable law" to include state law and federal common law.

The appeals arise from cases brought by the RTC in the district court for the District of New Jersey on behalf of two insolvent depository institutions -- United Savings and Loan of Trenton, New Jersey ("United Savings") and City Federal Savings Bank ("City Federal") in Bedminster, New Jersey -- against certain former directors, officers and employees of these institutions ("the defendants"). The RTC brought claims under New Jersey law against former directors and officers of United Savings, a state chartered institution, (the "United Savings defendants") and federal common law claims against former directors and officers of City Federal, a federally chartered institution, (the "City Federal defendants").

In the United Savings action, the district court denied the defendants' motion for dismissal and summary judgment as to the RTC's state law claims, concluding that § 1821(k) did not preempt any available actions for negligence and breach of fiduciary duty under New Jersey law. In the City Federal action, the district court granted the defendants' motion to dismiss the RTC's federal common law claims, concluding that the enactment of

§ 1821(k) supplanted any available federal common law actions for negligence and breach of fiduciary duty.[1]

Courts of appeals that have considered these issues have concluded that § 1821(k) does not preempt state law,[2] but that it does displace federal common law.[3] We agree that this provision does not preempt any available state law negligence or fiduciary duty claims; however, we disagree with the conclusion that Congress intended by enactment of this statute to supplant the RTC's ability to bring such actions under federal common law. Accordingly, we will affirm the district court's order in the United Savings action and reverse the court's order in the City Federal action.

## I. FACTS AND PROCEDURAL HISTORY

---

[1] In referring to the supplanting or displacement of federal common law by federal statutory enactments, we refrain from the use of the term "preemption" so as to avoid any confusion with the alternative question of state law preemption and its various incidents, which is also addressed in this opinion. See Milwaukee v. Illinois, 451 U.S. 304, 317 n.9 101 S. Ct. 1784, 1792 n.9 (1981) (illustrating the confusion which can result when the term "preemption" is used to refer to the displacement of federal common law by federal statutory enactments).

[2] See FDIC v. McSweeney, 976 F.2d 532 (9th Cir. 1992), cert. denied, 113 S. Ct. 2440 (1993); FDIC v. Canfield, 967 F.2d 443 (10th Cir.) (en banc), cert. dismissed, 113 S. Ct. 516 (1992).

[3] See RTC v. Frates, 52 F.3d 295 (10th Cir. 1995); FDIC v. Bates, 42 F.3d 369 (6th Cir. 1994); RTC v. Miramon, 22 F.3d 1357 (5th Cir. 1994); RTC v. Gallagher, 10 F.3d 416 (7th Cir. 1993).

The RTC, which has been appointed receiver of both United Savings and City Federal,[4] brought these actions on behalf of both insolvent institutions pursuant to 12 U.S.C.A. § 1821(d)(2)(A)(i) (1989), which provides that the RTC succeeds, upon its appointment as receiver, to all rights, titles, powers and privileges of such institutions, including claims arising out of the conduct of the institutions' directors and officers.  See O'Melveny & Myers v. FDIC, ___ U.S. ___, 114 S. Ct. 2048, 2054 (1994) (recognizing that upon its appointment as receiver, the RTC "obtain[ed] the rights 'of the insured depository institution' that existed prior to receivership" (quoting 12 U.S.C.A. § 1821(d)(2)(A)(i))).

A.  United Savings

In the United Savings action, the RTC alleges that the defendants failed to discharge their duties and obligations properly as directors, officers and members of United Bank's lending committees in connection with their consideration, approval and subsequent oversight of at least ten large acquisition, development and construction loans made to various borrowers between 1984 and 1990.  The RTC's complaint alleges breach of fiduciary duty and ordinary negligence under New Jersey law, as well as gross negligence under both New Jersey law and

---

[4]    The Director of the Office of Thrift Supervision of the U.S. Treasury Department ("OTS") appointed the RTC as Receiver of both institutions, declaring City Federal insolvent on December 7, 1989 and United Savings insolvent on June 15, 1990.

§ 1821(k) in the approval of these loans, which allegedly resulted in a loss to United Savings of approximately $12.7 million.

In particular, the RTC alleges that the defendants violated their duty of care by: (1) not hiring experienced lending underwriters or managers; (2) failing to reduce underwriting guidelines to a written form; (3) approving large loans after closing had already taken place; (4) maintaining inadequate appraisal procedures (often relying on appraisals provided by the borrower); (5) failing to maintain adequate internal controls; (6) not returning funds during the construction phase of commercial properties pending issuance of final occupancy permits; and (7) generally operating United Savings in an unsafe and unsound manner. According to the RTC, the defendants continued these practices despite warnings by regulators, outside directors and accountants. The RTC does not allege, however, any self-dealing, conflict of interest, bad-faith or fraud on the part of the defendants.

In response to the RTC's complaint, the defendants moved to dismiss, or in the alternative for summary judgment, as to all New Jersey law claims based on ordinary negligence or breach of fiduciary duty, arguing that § 1821(k) preempts the RTC's right to bring such claims. The district court entered an order denying defendants' motion and then granted the defendants' request to certify the court's order for interlocutory appeal

pursuant to 28 U.S.C.A. § 1292(b) (1993).[5]  We granted the

petition for leave to appeal.[6]

---

[5]  While the question of federal common law preemption was also certified by the district court in the United Savings action, the RTC now concedes that, absent the application of § 1821(k), only state law governs cases involving the liability of directors and officers of state-chartered institutions such as United Savings, while federal law exclusively governs such cases when the institution is federally chartered, like City Federal. This concession flows from the RTC's recognition that the applicable law governing the liability of officers and directors for their stewardship of the corporation is the law of the jurisdiction of incorporation. See RTC v. Chapman, 29 F.3d 1120, 1122 (7th Cir. 1994) (reaching this conclusion under the "venerable choice-of-law principle known as the internal affairs doctrine")

[6]  In denying the United Savings defendants' motion to dismiss all negligence and breach of fiduciary duty claims under New Jersey law, the district court also rejected the defendants' argument that the business judgment rule as applied by New Jersey courts precludes any claims against independent, disinterested directors in the absence of an allegation of self-dealing, conflict of interest, bad faith or fraud.  While we certified this interesting and important issue for interlocutory appeal, we now conclude that it is not ripe for decision. See Michota v. Anheuser-Busch, Inc., 755 F.2d 330, 336 (3d Cir. 1985) (declining to decide an issue certified as part of an interlocutory appeal pursuant to § 1292(b) and "remand[ing] it for resolution in the proper course of the remaining litigation").  Resolving this question at this stage of the litigation would require us to prescribe the scope of the protection provided by the business judgment rule to directors and officers under New Jersey case law without the benefit of greater factual development in this case. As the new Restatement of Corporate Governance recognizes, "[t]he application of duty of care standards is . . . [a] heavily fact oriented" analysis. PRINCIPLES OF CORPORATE GOVERNANCE § 4.01 cmt. h (1994) (emphasis added) ("The application of duty of care standards is . . . shaped by evidence of what can reasonably be expected of directors and officers in the context of the functioning of the modern corporation.").  Given the fact-intensive nature of the law in this area, we conclude that the preferable course is to permit the district court's order denying the United Savings defendants' motion for summary judgment to stand so that greater factual development can occur.  This course

B.  City Federal

In the City Federal action, the RTC alleged that the defendants failed to discharge their duties and obligations properly as directors and officers of City Federal in connection with their consideration, approval and subsequent oversight of several large acquisition, development and construction loans made to various borrowers during 1985 through 1989.  The RTC's complaint alleges breach of fiduciary duty, negligence under federal common law, and gross negligence under both federal common law and § 1821(k) in the approval of these loans, which allegedly resulted in damages to City Federal of approximately $100 million.  In particular, the RTC alleges that the defendants violated their duty of care by: (1) failing to obtain and verify necessary financial information from borrowers; (2) maintaining inadequate appraisal procedures; (3) consistently loaning funds based on excessively high loan-to-value ratios that violated mandatory limits placed on such ratios; (4) making repeated imprudent long-range commitments to future lending or funding; (5) failing to monitor loan disbursements and the ongoing status of projects and loans; (6) improperly waiving risk limitations and other conditions contained in loan commitments to certain borrowers; (7) failing to require and verify that necessary

will allow the district court better to predict the scope of protection that the New Jersey Supreme Court would accord the defendants under the business judgment rule by providing the court with the opportunity to evaluate the defendants' conduct vis-à-vis New Jersey case law.

permits and approvals were obtained before funding the loans; (8) improperly assessing the value of guarantees given as security for the loans; and (9) not requiring adherence to the Bank's lending policies and procedures.  In this action, the RTC does not allege any self-dealing, conflict of interest, bad-faith or fraud on the part of the defendants.

The City Federal defendants responded to the RTC's complaint by moving to dismiss all claims, other than gross negligence, arguing that § 1821(k) established an exclusive federal gross negligence standard of care for directors and officers of failed federally chartered financial institutions which supplanted any simple negligence claims available under federal common law.  The district court agreed with the defendants' argument and accordingly granted their motion to dismiss the RTC's complaint to the extent that it alleged claims other than gross negligence.  The district court granted the RTC's request to certify the court's order pursuant to 28 U.S.C. § 1292(b), and we granted the petition for leave to appeal.

## II. FINANCIAL INSTITUTIONS, REFORM, RECOVERY, AND ENFORCEMENT ACT OF 1989

All parties agree that in enacting § 1821(k) Congress intended to preempt state laws which limit the liability of directors and officers to instances of conduct more culpable than

gross negligence (i.e. intentional misconduct). At issue in these appeals is whether Congress, by its enactment of § 1821(k), also preempted state law or displaced federal common law actions that impose liability for conduct less culpable than gross negligence (e.g. ordinary negligence). As we have stated, the question of the interpretation of § 1821(k) is one of first impression in this circuit. Our review of the construction of federal statutes is plenary. See Doherty v. Teamsters Pension Trust Fund, 16 F.3d 1386, 1389 (3d Cir. 1994).

## A. The Plain Meaning of the Statute

"The starting point for interpretation of a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 835, 110 S. Ct. 1570, 1575 (1990) (internal quotation marks omitted).

The disposition of these appeals turns on the breadth of § 1821(k)'s last sentence, which has become known as the "savings clause." Congress provided that "[n]othing in this paragraph shall impair or affect any right of the Corporation under other applicable law." 12 U.S.C.A. § 1821(k) (emphases supplied). The RTC contends that this sentence manifests congressional intent to preserve the RTC's ability to seek recovery from directors and officers under all "other applicable

laws," including the less forgiving negligence and fiduciary duty standards of care under state law and federal common law. We agree.[7]

The defendants contend that, when Congress referred to "other applicable law" in § 1821(k), it intended to refer only to the RTC's ability to pursue regulatory actions under other sections of FIRREA, such as the RTC's rights under 12 U.S.C.A.

---

[7] We note that, in addition to focusing on the statute's saving clause, courts concluding that § 1821(k) did not preempt state laws which held directors and officers liable for conduct less culpable than gross negligence, have also gleaned the limited preemptive intent of Congress from its use of the word "may" as opposed to "may only" in the first sentence of the provision: "[a] director or officer . . . may be held personally liable for monetary damages . . . for gross negligence." In Canfield, for example, the court read "may" as a "permissive term" that "does not imply a limitation on the standards of officer and director liability," refusing "to construe the first sentence of the section as saying that an officer or director may only be held personally liable for gross negligence." Canfield, 967 F.2d at 446 (citing Rose v. Rose, 481 U.S. 619, 626-27, 107 S. Ct. 2029, 2034 (1987), where the Court refused to read "may" as establishing anything but discretionary power). The Ninth Circuit in McSweeney agreed. McSweeney, 976 F.2d at 537 ("Had Congress intended this authorizing provision to limit the FDIC . . . it would have inserted the word `only' in the sentence."). But see Bates, 42 F.3d at 371 (rejecting this reading as placing "undue emphasis on the word `may,' which does not modify the substance of the provision"); Miramon, 22 F.3d at 1361 (same); Gallagher, 10 F.3d at 420 (same).

We decline to rest our reading of the text of § 1821(k) primarily on the belief that Congress intended to demonstrate its limited preemptive intent through the use of the word "may" in the statute's first sentence. We do acknowledge, however, that such a construction is consistent with what we believe to be otherwise obvious from the statute's language and legislative history -- Congress intended to permit the RTC to continue to seek recovery under laws that hold directors and officers to a more stringent standard of care.

§ 1818(b)-(g) (West Supp. 1995) to seek removal of negligent directors and officers and to issue "cease and desist" orders in cases of simple negligence.  But Congress could not have intended to restrict the RTC to such a limited and specific set of legal claims by a general reference in this provision to "other applicable law."  When Congress limited its reference to the law of a particular jurisdiction in other sections of FIRREA, it did so with specific language.  See, e.g., 12 U.S.C.A. § 1821(c)(3)(B) (1993) ("powers imposed by State law" (emphasis added)); 12 U.S.C.A. § 1821(c)(4) (1993) ("notwithstanding any other provision of Federal law, the law of any State, or the constitution of any State" (emphasis added)).  In particular, when Congress limited its reference to other portions of FIRREA itself, it also did so specifically.  See, e.g., 12 U.S.C.A. § 1821(e)(3)(C)(ii) (West Supp. 1995) ("except as otherwise specifically provided in this section" (emphasis added)).  Given the specific nature of these references in other portions of FIRREA, we think that § 1821(k)'s reference to other applicable law plainly demonstrates an intent to refer to all other applicable law.

Such a reading of the statutory language is consistent with the Supreme Court's decision in Patterson v. Shumate, 504 U.S. 753, 112 S. Ct. 2242 (1992), where the Court read a reference to "applicable nonbankruptcy law" in 11 U.S.C.A. § 541(c)(2) to encompass "any relevant nonbankruptcy law,

including federal law such as ERISA."  See also Reich v. Webb, 336 F.2d 153, 158 (9th Cir. 1964) (reading the language "any other law" of 12 U.S.C. § 1464(d)(1) as authorizing federal regulators to enforce "common law fiduciary responsibilities . . . through appropriate court action"), cert. denied 380 U.S. 915 (1965).

Moreover, reading the savings clause to provide for a broad retention of existing rights is supported by its placement at the conclusion of the statutory provision.  In Abbott Lab. v. Gardner, 387 U.S. 136, 145, 87 S. Ct. 1507, 1513-14 (1967), the Court affirmed that "it is difficult to think of a more appropriate place to put a general saving clause than where Congress placed it -- at the conclusion of the section setting out a special procedure for use in certain specified instances." Id. (emphases added).

B.   The Legislative History

Our reading of § 1821(k)'s language is supported by clear legislative history, which, in our view, manifests an effort to place a floor, not a ceiling, on the liability of directors and officers.  See Chapman, 29 F.3d at 1126 (Posner, C.J., dissenting) ("The purpose of section 1821(k), as the timing of the statute's enactment and other features of its history make clear, was to place a floor under the liability of directors of savings and loan associations, which were falling like ninepins.").  We necessarily begin our examination of § 1821(k)'s

legislative history with an inspection of "the provisions of the whole law, and . . . its object and policy." Dole v. United Steelworkers, 494 U.S. 26, 35, 110 S. Ct. 929, 934 (1990).

Section 1821(k) was enacted as part of FIRREA, a massive 371-page legislative package that had among its primary purposes, as evident in the opening provision of the statute, "strengthen[ing] the enforcement powers of Federal regulators of depository institutions" and "strengthen[ing] the civil sanctions and criminal penalties for defrauding or otherwise damaging the depository institutions and their depositors." Pub. L. No. 101-73, § 101(9)-(10), 103 Stat. 183, 187 (1989) (emphasis added) (reprinted in 12 U.S.C.A. § 1811 note (West Supp. II 1990)). An overriding purpose in enacting this legislation was to facilitate an effort to "seek out and punish those that have committed wrongdoing in the management of the failed institutions,"[8] not to protect such directors and officers from claims of ordinary negligence.

Section 1821(k), in particular, was, as we have already noted, a reaction to the enactment by various states, during the middle and late 1980s, of lenient director liability statutes which protected directors from gross negligence claims by limiting their liability to instances of reckless, willful and

---

[8] President's News Conference on Savings Crisis and Nominees, N.Y. TIMES, Feb. 7, 1989, at D8, col. 1 (statement of President Bush).

wanton boardroom misconduct.[9]  States enacted these laws out of a policy concern that too stringent a standard of care would impede the ability of a corporation to attract and retain the most qualified individuals as corporate directors.  This "race to the bottom"[10] among certain states was a reaction to the Delaware Supreme Court's decision in Smith v. Van Gorkom, 488 A.2d 858 (Del. 1985), which held the directors of Trans Union Corporation liable for their ostensible gross negligence in approving a cash-out merger notwithstanding the absence of any allegations of fraud, bad-faith or self-dealing.  The various states enacting these statutes rejected the result in Van Gorkom and sought to ensure that their domestic corporations could attract and retain

---

[9]  See, e.g., IND. CODE ANN. § 23-1-35-1(e)(2) (Burns 1994) (declaring that directors are not liable unless their conduct constitutes at least "willful misconduct or recklessness"); FLA. STAT. ANN. § 607.0831 (West 1994) ("recklessness or an act or omission which was committed in bad faith or with malicious purpose"); OHIO REV. CODE ANN. § 1701.59(D) (Anderson 1994) ("deliberate intent to cause injury to the corporation or undertaken with reckless disregard for the best interest of the corporation"); see also 8 DEL. CODE ANN. § 102(b)(7) (West 1994) (permitting a company's stockholders to adopt provisions that would limit a director's liability to actions that are illegal, that constitute a breach of the separate duty of loyalty or that constitute intentional transgressions); ARIZ. REV. STAT. ANN. § 10-054(A)(9) (West 1994) (same); CAL. CORP. CODE § 204(a)(10) (West 1995) (same).

[10]  William L. Cary, Federalism and Corporate Law: Reflections upon Delaware, 83 YALE L.J. 663 (1974) (describing the process whereby states follow each other in enacting changes in their corporate law that provide greater protection to officers and directors as a "race to the bottom")

qualified directors and officers by protecting them from claims of gross negligence.[11]

At the same time that states were extending protection from liability to corporate directors, the regulators of federally insured depository institutions were embarking on a concerted litigation campaign to recoup from allegedly corrupt and incompetent directors a portion of the billions of federal dollars lost in the bankruptcy of federally insured thrifts. The enactment of § 1821(k) represents an attempt to facilitate this litigation in the wake of the impediments posed by state statutes insulating directors and officers from liability for gross negligence. The debates over § 1821(k) in the Senate demonstrate this intent to facilitate the recovery effort.[12]

The original Senate provision, § 214(n) of the Act, would have allowed the RTC to sue directors and officers under

_____

[11] See generally Daniel R. Fischel, The Business Judgment Rule and the Trans Union Case, 40 BUS. LAW. 1437 (1985); Harvey Gelb, Director Due Care Liability: An Assessment of the New Statutes, 61 TEMP. L. REV. 13 (1988).

[12] Section 1821(k) originated in the Senate; and, other than a technical change in the wording of the savings clause, no substantive debate or amendments to this provision occurred in the House or at Conference. The House replaced the Senate version of the Savings clause, which had referred to "any right, if any, of the [RTC] that may have existed immediately prior to the enactment of the FIRREA act," with the current version. The defendants in these actions, however, correctly do not attribute any substantive change in Congressional intent to the adoption of this amendment. See McSweeney, 976 F.2d at 541 n.9 ("We see nothing in this change to indicate an intent to expand the preemptive effect of this provision.").

"any cause of action available at common law, including, but not limited to, negligence . . . [and] breach of fiduciary duty." S. 774, 101st Cong., 1st Sess. § 214(n) (1989). During the Senate debate, this proposal was modified so as to scale back the extent of state law preemption by raising the floor on the liability of directors from "negligence" to "gross negligence."

The amendment resulted, in large part, from a concern expressed by Senator Sanford that the sweep of the original provision was too broad given the valid policy interest, expressed by states enacting legislation in response to the Van Gorkom decision, of attracting the best qualified individuals as directors. 135 CONG. REC. 7150-51 (Apr. 19, 1989). Senator Sanford expressed the case for the amendment as follows:

> The bill as drafted would have preempted numerous state laws which provided limited indemnification for directors and officers. These state laws were enacted largely in response to problems faced by corporations in attracting good officers and directors. . . . The amendment which the managers have accepted modifies the bill to preempt state law only in a very limited capacity. . . . [Section 1821(k)] is not a wholesale preemption of longstanding principles of corporate governance, nor does it represent a major step in the direction of establishing Federal tort standards or Federal standards of care of corporate officers and directors.

Id. Senator Riegle, the bill's floor manager, evinced agreement with these concerns, see id. at S4265, and introduced an amendment reducing the amount of preemption.

During its introduction, Senator Riegle again explained the purpose of the amendment:

> In recent years, many States have enacted legislation that protects directors or officers of companies from damage suits. These "insulating" statutes provide for various amounts of immunity to directors and officers. For example, in Indiana, a director or officer is liable for damages only if his conduct constitutes "willful misconduct or recklessness."
>
> The reported bill totally preempted state law in this area, with respect to suits brought by the FDIC against bank directors and officers. However, in light of the state law implications raised by this provision, the manager's amendment scales back the scope of this preemption.
>
> Under the managers' amendment, State law would be overruled only to the extent that it forbids the FDIC to bring suit based on "gross negligence" or an "intentional tort."

Id. at 7152–53 (Apr. 19, 1989) (emphases added). Senators Roth and Garn also expressed similar sentiments: the intent of this amendment was to limit, not expand, the preemptive scope of the provision. See id. at 7155.

The defendants, however, like the Seventh Circuit in Gallagher, 10 F.3d at 422–23, interpret the concerns motivating this amendment to demonstrate Congressional intent to adopt a national standard of gross negligence for actions brought by the RTC in the service of a federal policy of attracting qualified officers and directors to federally insured financial

institutions.[13]  We reject this "revisionism," since, as we have demonstrated, the evolution of § 1821(k) in the Senate does not represent the adoption of a national standard of gross negligence over one of ordinary negligence, but rather reflects an effort to decrease the amount of state law preemption by raising the floor on the liability of directors and officers.

The limited sweep of § 1821(k) is also explicitly demonstrated in a final section-by-section report prepared by the Senate Banking Committee.  This report is consistent with other contemporaneous legislative history, and it makes clear that § 1821(k) did not disturb any claims, available as a matter of state or federal law, that would hold directors and officers liable for conduct less culpable than gross negligence:

> This subsection does not prevent the FDIC from pursuing <u>claims under State law or other applicable Federal law</u>, if such law permits the officers or directors of a financial institution to be sued (1) for violating a <u>lower standard of care, such as simple negligence</u>.

---

[13]  To support their position the defendants also incorrectly point to a statement made by Senator Heflin:  "I think the language should be reviewed and, in my judgment, changed to ensure that financial institutions are able to attract strong and capable individuals as directors and officers."  135 Cong. Rec. at 7137.  As recognized by the Tenth Circuit in <u>Canfield</u>, 967 F.2d at 790, Senator Heflin's comments do not relate to § 1821(k), but rather involved a proposed change to 12 U.S.C.A. § 1818(i)(2) (Supp. 1995), which made it more difficult for the RTC to obtain civil penalties against directors and officers.  <u>See</u> 135 Cong. Rec. at 7138 ("I am merely recommending that due process and fairness dictate that clear standards should be included in assessment of civil penalties." (statement of Senator Heflin)).

135 Cong. Rec. S6912 (daily ed. June 19, 1989) (emphases supplied).

The defendants would have us discount this report as post-enactment legislative history, even though it was available six weeks before both the Senate and the House enacted the final version of FIRREA into law. The defendants base their argument on the fact that the Senate Banking Committee did not publish this report until two months after the Senate passed an initial version of FIRREA, since the period of time between introduction and passage of the Senate's initial bill was so short. In support of this position, the defendants rely on Clarke v. Securities Industry Ass'n, 479 U.S. 388, 407, 107 S. Ct. 750, 761 (1987), where the Court refused to "attach substantial weight" to a statement placed in the congressional record by a sponsor of an act ten days after the law was passed. See Gallagher, 10 F.3d at 421-22. The Supreme Court's opinion in Clarke is distinguishable, however, given that the legislative history in Clarke involved a statement "placed in the Congressional Record 10 days after the passage of the . . . Act." Clarke, 479 U.S. at 407, 107 S. Ct. at 761. In discounting the value of the statement at issue, the Court recognized that "Congress did not have [the statement] before it in passing the . . . Act." Id. In contrast, Congress (both Houses), in enacting § 1821(k), did have this report "before it" in passing the final version of FIRREA. Moreover, the legislative history in Clarke did not

involve a report prepared by the congressional committee that originally considered the provision in question but rather involved a statement by a single congressman whom the Court considered not to be an "impartial interpreter of the bill."  Id.

To support their reading of § 1821(k)'s legislative history, the defendants rely on a portion of FIRREA's Conference Report, which provides:

> Title II preempts State law with respect to claims brought by the FDIC in any capacity against officers and directors of an insured depository institution.   The preemption <u>allows</u> the FDIC <u>to pursue claims</u> for gross negligence or any conduct that demonstrates a <u>greater  disregard  of  a  duty  of  care</u>, including intentional tortious conduct.

H.R. REP. NO. 222, 101st Cong., 1st Sess., <u>reprinted in</u> 1989 U.S.C.C.A.N. 432, 437 (emphases supplied).  We do not believe that the Conference Report supports the defendants' position. While the report does acknowledge that § 1821(k) preempts State law, such an acknowledgement is entirely consistent with the statute's limited preemptive intent.  Moreover, the second sentence of this portion of the Conference Report acknowledges that which is evident throughout the legislative history: § 1821(k) "allows" the RTC to pursue claims for gross negligence in states not permitting such claims, but does not "limit" it from pursuing claims for ordinary negligence, when available under applicable law.  See <u>Canfield</u>, 967 F.2d at 448 n.6; <u>McSweeney</u>, 976 F.2d at 539.

We are also unpersuaded by the defendants' reliance on congressional attempts to preserve more explicitly the RTC's right to bring a claim for negligence under other applicable state or federal law by seeking to amend § 1821(k) in years following its enactment.[14]  It is settled law that post-enactment legislative history should be afforded little or no weight, especially in the face of contradictory contemporaneous legislative history.  See U.S. v. Texas, ___ U.S. ___, ___ n.4, 113 S. Ct. 1631, 1635 n.4 (1993) ("[S]ubsequent legislative history is a hazardous basis for inferring the intent of an earlier Congress." (internal quotation marks omitted)); U.S. v. Knox, 32 F.3d 733, 749 n.14 (3d Cir. 1994) ("[P]ost-enactment legislative history . . . should be given little, if any, weight because [it] do[es] not necessarily reflect the intent of the members of Congress who originally enacted the statutory language."), cert. denied 115 S. Ct. 897 (1995).  As this court has stated, adopting the language of Justice Scalia,

---

[14]  For example, Congressman Richard Baker of Louisiana proposed an amendment in October 1991, which provided:

> Paragraph (1) shall not be construed as impairing or affecting any right of the . . . [RTC] under any provision of applicable State or other federal law, including any provision of common law or any law establishing the personal liability of any director or officer of any insured depository institution under any standard pursuant to such law.

H.R. 3435, 102d Cong., 1st Sess. § 228 (Comm. Markup Oct. 18, 1991).

> "Subsequent legislative history" –– which presumably means the <u>post</u>-enactment history of a statute's consideration and enactment –– is a contradiction in terms. . . . Arguments based on subsequent legislative history, like arguments based on antecedent futurity, should not be taken seriously, not even in a footnote.

<u>Id.</u> (quoting <u>Sullivan v. Finkelstein</u>, 496 U.S. 617, 631–32, 110 S. Ct. 2658, 2667 (1990) (Scalia, J., concurring in part)).

In particular, courts should be hesitant to examine congressional attempts to amend ambiguous legislative provisions in an effort to determine the intent of a previous Congress in originally enacting the law. The fact that Congress subsequently sought to clarify the limited preemptive intent of § 1821(k) in the face of conflicting judicial interpretations[15] is not surprising. Courts finding "retrospective" legislative intent in such proposed enactments could improperly draw inferences from unsuccessful Congressional attempts to clarify ambiguities which Congress did not perceive at the time of enactment. Such attempts simply do not shed light on the intent of the Congress that originally enacted the provision.

---

[15] The dispute in the Courts of Appeals about the intended preemptive effect of § 1821(k) was preceded by similar disagreement among district courts considering these issues at the time Congress proposed the clarifying amendment. <u>Compare FDIC v. Canfield</u>, 763 F. Supp. 533 (D. Utah 1991) (concluding that § 1821(k) preempts state law), <u>rev'd</u>, 967 F.2d 443 (10th Cir. 1992) (en banc); <u>FDIC v. Miller</u>, 781 F. Supp. 1271 (N.D. Ill. 1991) (concluding that § 1821(k) displaces federal common law) <u>with</u> <u>FDIC v. Isham</u>, 777 F. Supp. 828 (D. Colo. 1991) (concluding that § 1821(k) does <u>not</u> preempt state law), <u>and</u> <u>FDIC v. Haddad</u>, 778 F. Supp. 1559 (S.D. Fla. 1991) (same).

In sum, we conclude that the legislative history associated with FIRREA, and particularly § 1821(k), does not manifest Congressional intent to adopt a uniform gross negligence standard of care for directors and officers of bankrupt federally insured depository institutions. Rather, the legislative history reflects an effort to ensure that directors and officers of state-chartered institutions (whom Congress viewed as responsible for a portion of the significant amount of federal money lost in the insolvency of such institutions) not escape liability to the RTC under the shield of certain state laws that had effectively insulated them even from claims based on their grossly negligent or reckless conduct. The intent of Congress was to strengthen, not weaken, the RTC's hand in pursuit of directors and officers. Mindful of this intent, and of our reading of the statute's language, we now directly address, in turn, the particular questions whether Congress preempted state law, or supplanted federal common law claims brought by the RTC for negligence and breach of fiduciary duty.

### III. State Law Preemption

Pursuant to the Supremacy Clause, U.S. Const. Art. VI, cl. 2, "state laws that 'interfere with, or are contrary to the laws of congress, made in pursuance of the constitution' are invalid." Wisconsin Public Intervenor v. Mortier, 501 U.S. 597, 604, 111 S. Ct. 2476, 2481 (1991) (quoting Gibbons v. Ogden, 9

Wheat 1, 211 (1824)).  Federal law preempts existing state law in either of two ways:  (1) through evidence of congressional intent to supplant state authority in a particular area, as expressed either through the language of the statute, see Jones v. Rath Packing Co., 430 U.S. 519, 525, 97 S. Ct. 1305, 1309-10 (1977), or implicitly through the enactment of a federal regulatory scheme "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S. Ct. 1146, 1152 (1947); or (2) when federal law and state law actually conflict, such as when "compliance with both federal and state regulations is a physical impossibility," Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142-43, 83 S. Ct. 1210, 1217 (1963), or when a state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," Hines v. Davidowitz, 312 U.S. 52, 67, 61 S. Ct. 399, 404 (1941).

As we have stated, both a plain reading of § 1821(k) and an interpretation of its legislative history reflect a congressional effort to expand, not constrain, the RTC's ability to recover against directors and officers by enabling it to seek recovery in those states that had adopted laws insulating officers and directors from liability.  Given this interpretation of the statute and its legislative history, we conclude that Congress intended to leave room for state law to supplement § 1821(k) by permitting recovery in instances of ordinary

negligence.  Moreover, we do not believe that state laws subjecting directors of federally insured depository institutions to a more stringent standard of care by permitting recovery in instances of negligence conflict in any way with the congressional enactment of § 1821(k).  In fact, such state laws are consistent with the expressed congressional purpose in enacting FIRREA of "strengthen[ing] the enforcement powers of Federal regulators of depository institutions" and "strengthen[ing] the civil sanctions . . . for . . . damaging the depository institutions and their depositors."  Pub. L. No. 101–73, § 101(9)-(10), 103 Stat. 183, 187 (1989) (emphases added) (reprinted in 12 U.S.C.A. § 1811 note (West Supp. II 1990)).

The two Courts of Appeals that have directly confronted this question also have reached this conclusion.  In Canfield, 967 F.2d at 443, the Tenth Circuit sitting en banc concluded that § 1821(k) did not preempt available state law claims that permit the RTC to recover in instances of conduct less culpable than gross negligence, and the Ninth Circuit in McSweeney, 976 F.2d at 532, relying on Canfield, reached an identical result.  In addition to interpreting § 1821(k)'s language and legislative history in a manner similar to that expressed supra, these courts set forth several additional reasons in support of their conclusion, which we also find persuasive.

First, they rejected the contention that Congress was motivated in enacting § 1821(k) by a need for a national

liability standard in view of the fact that the statute clearly calls for the application of <u>various</u> applicable state law definitions of gross negligence.  12 U.S.C.A. § 1821(k) ("as such terms are defined and determined under <u>applicable State law</u>"); <u>McSweeney</u>, 976 F.2d at 539; <u>Canfield</u>, 967 F.2d at 447.  The <u>Canfield</u> court noted that, given the vast differences in the standards of gross negligence in the various states, <u>id.</u> ("`[T]here is . . . no generally accepted meaning [of gross negligence]'" (quoting W. PAGE KEETON, ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 34 at 212 (5th ed. 1984)), "the statute cannot possibly, even without the last sentence, create a national standard of liability."  <u>Canfield</u>, 967 F.2d at 447.  We agree that the congressional use of state law formulations of gross negligence further illustrates the limited preemptive intent of Congress in enacting § 1821(k).  If Congress had been motivated by a need for uniformity in the law it would not have invoked the application of alternative state definitions of gross negligence, but rather would have called for the application of a uniform federal standard.

In addition, the <u>Canfield</u> and <u>McSweeney</u> courts also based their result on a persuasive policy concern:

> [U]nder defendants' interpretation, consider the position of an officer or director of a troubled federally insured institution in a state allowing actions for negligence. Prior to failure, liability would attach for simple negligence.  After failure, liability would only attach if the officer or director could be proven grossly negligent under the applicable state definition.  As the

> institution struggles, therefore, section
> 1821(k) would create an incentive for the
> officers and directors to allow the bank to
> fail. It simply cannot be that FIRREA would
> indirectly encourage such behavior when it
> was designed in part, according to its stated
> purposes, "to curtail . . . activities of
> savings associations that pose unacceptable
> risks to the Federal deposit insurance
> funds." FIRREA, Pub. L. No. 101-73, § 101(3),
> 103 Stat. 183, 187 (1989).

Canfield, 967 F.2d at 449; see also McSweeney, 976 F.2d at 540-41.

In response to this argument, the defendants correctly point out that if a director or officer purposely engages in conduct leading an institution into receivership, such actions would themselves constitute intentional conduct and indisputably result in liability under § 1821(k). See also Canfield, 967 F.2d at 450 n.5 (Brorby, J., dissenting). On balance, however, we find this rejoinder to the RTC's policy argument unpersuasive. Directors and officers of financial institutions are well advised of their potential liability under the law. (Indeed, the argument that too stringent a standard of care will discourage capable people from becoming or remaining as directors itself presumes a sophisticated level of knowledge on the part of such individuals.) For instance, they would undoubtedly be aware that federal receivership would insulate them from claims of negligence. Armed with this knowledge, directors and officers of institutions chartered in states permitting such claims would have more of an incentive to engage in conduct, which the RTC

could not necessarily prove rises to the level of intentional conduct or gross negligence, but which nonetheless placed the institution at greater risk of receivership.

In sum, we conclude that Congress did not intend to hinder the RTC by denying it an opportunity to recover for instances of director and officer negligence when shareholders of these institutions would have had a right under state law before receivership, to bring such an action on behalf of the corporation. Accordingly, we conclude § 1821(k) does not preempt the RTC's right to pursue a claim for conduct less culpable than gross negligence, if any are available under New Jersey law, against the United Savings defendants.

### IV.   Displacement of Federal Common Law

We next address whether, by its enactment of § 1821(k), Congress foreclosed the RTC's ability to bring a claim against officers or directors of federally chartered depository institutions under federal common law for conduct less culpable than gross negligence. The answer to the question of federal common law displacement turns on an interpretation of congressional intent. While it is unnecessary to find that Congress "had affirmatively proscribed the use of federal common law," in order to conclude that federal common law has been supplanted, Milwaukee v. Illinois, 451 U.S. 304, 315, 101 S. Ct. 1784, 1791 (1981) (internal quotation mark omitted), "any terms

of the statute explicitly preserving or preempting judge-made law are of course controlling, as is clear evidence of Congressional intent to achieve such results." In re Complaint of Oswego Barge Corp., 664 F.2d 327, 339 (2d Cir. 1981) ("In the absence of clearly expressed legislative intent, legislative history may provide useful guidance.").

Lacking statutory language or clear evidence of congressional intent, we must glean the intent of Congress by examining whether "the legislative scheme spoke directly" to the question previously addressed by federal common law, Milwaukee v. Illinois, 451 U.S. at 315, 101 S. Ct. at 1791 (internal quotation mark omitted), and assessing the "scope of the legislation." Id. at 314–15 n.8, 101 S. Ct. at 1791–92 n.8 (examining whether "'the field has been made the subject of comprehensive legislation or authorized administrative standards.'" (quoting Texas v. Pankey, 441 F.2d 236, 241 (10th Cir. 1971)). In whole, our inquiry must discern the intent of Congress so as to resolve the question whether applying federal common law would constitute "filling a gap left by Congress' silence," which is proper, or involve "rewriting rules that Congress has affirmatively and specifically enacted," which is improper. Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 625, 98 S. Ct. 2010, 2015 (1978).

We must begin our inquiry, as we have stated, by determining whether "any terms of the statute explicitly preserv[e] or preempt[] judge-made law." Oswego Barge, 664 F.2d

at 339.  In drafting § 1821(k), Congress provided such language, stating "[n]othing in this paragraph shall impair or affect <u>any right</u> of the Corporation under <u>other applicable law</u>."  12 U.S.C.A. § 1821(k) (emphases supplied).  We read the plain meaning of this savings clause as preserving the RTC's right to proceed against directors and officers of federally-chartered institutions under federal common law.  The defendants concede that before receivership City Federal ("the Corporation") had a right to bring an action against them under federal common law.  Furthermore, they concede that upon receivership the RTC "obtain[ed] the rights of [City Federal,] the insured depository institution that existed prior to receivership."  <u>O'Melveny & Myers</u>, 114 S. Ct. at 2054.  Accordingly, we conclude the plain meaning of this provision -- which, stated again, preserves "<u>any</u> right of the Corporation under <u>other applicable law</u>" -- secures the RTC's ability to proceed against the defendants pursuant to City Federal's pre-existing rights under federal common law.  In so doing, we reject the City Federal defendants' reading of this provision's reference to "other applicable law" as one intended to invoke only the RTC's rights under other sections of FIRREA or State law.  As we have demonstrated, when Congress intended to limit its reference to the law of a particular jurisdiction or to other portions of FIRREA itself, it did so with the use of <u>specific</u> language.  <u>See</u> <u>supra</u> pages 14-15.

Notwithstanding the plain meaning of § 1821(k)'s savings clause, the defendants contend that we must declare any available federal common law claims supplanted if Congress "spoke directly" to the question of the liability of directors and officers of insolvent depository institutions or "'occupied the field through the establishment of a comprehensive regulatory program supervised by an expert administrative agency,'" Gallagher, 10 F.3d at 424 (quoting Milwaukee, 451 U.S. at 317, 101 S. Ct. at 1792). We think that is not enough since, as we have stated, the answer to the question of federal common law displacement, like state law preemption, must turn, in the first instance, on an interpretation of congressional intent, looking to the text of the statute and then to its legislative history.

In support of their position, the defendants rely on the Supreme Court's decision in Milwaukee v. Illinois, supra, which concluded that the enactment of the 1972 Amendments to the Federal Water Pollution Control Act supplanted the federal common law claim for abatement of a nuisance caused by interstate water pollution. The Court did so after examining the scope of the legislation and whether it spoke directly to the question previously addressed by federal common law. We do not believe the Supreme Court's opinion in Milwaukee is inconsistent with our approach.

The Court in Milwaukee did not reach its conclusion that federal common law was supplanted until after first

examining in detail the question whether "congressional intent to preserve the federal common-law remedy . . . is evident in . . . the statute."  See Milwaukee, 451 U.S. at 327-31, 101 S. Ct. at 1797-1800.  The Court concluded that no such congressional intent was present.  Id.  In contrast, the intent of Congress surrounding the adoption of § 1821(k), as evident by both the provision's plain meaning and its legislative history, explicitly preserves any federal remedy for conduct violating a lower standard of care, such as simple negligence.  The relevant Senate Report clearly states that "this subsection does not prevent the FDIC from pursuing claims under . . . other Federal law, if such law permits the officers or directors of a financial institution to be sued (1) for violating a lower standard of care, such as simple negligence."  135 CONG. REC. S6912 (daily ed. June 19, 1989).

Moreover, we do not believe (1) that § 1821(k) "spoke directly" to the standard of care applicable to directors and officers of federally-chartered depository institutions or (2) that the scope of this legislation occupied the field.  The defendants contend that in enacting § 1821(k) Congress "spoke directly" to the standard of care for directors and officers of federally chartered institutions previously governed by federal common law.  We disagree.  As we have demonstrated, in enacting § 1821(k) Congress sought to address the question of what standard should apply in cases where the RTC was confronted with

an applicable state insulating statute, so as to ensure that the RTC could recover when the applicable state law insulated directors and officers from actions for gross negligence. While portions of FIRREA were enacted to govern both state and federally chartered institutions, see 12 U.S.C.A. § 1813(a)-(c) (1989), § 1821(k) was simply not enacted to define the standard of care applicable to federally chartered institutions governed by federal common law.

Section 1821(k) calls for the application of the "applicable State law" formulation of gross negligence. To read this sub-section as supplanting federal common law would be to create an additional (and serious) problem, because it is unclear which formulation of gross negligence the City Federal defendants would have us apply. See KEETON, supra, at 212 (there is "no generally accepted meaning" of gross negligence). In a case involving the liability of directors and officers of a federally chartered institution, such as City Federal, no state law standard is "applicable," since federal law governs the liability of such individuals. See Chapman, 29 F.3d at 1122. If Congress had intended to speak directly to the question of what standard should apply when the depository institution is federally chartered, it would, in our view, have addressed the question of which formulation of gross negligence should apply in such instances. The absence of such direction and the provision's reference to "applicable State law" reinforces our conclusion

that Congress did not intend to address the liability standards applicable to directors and officers of federally chartered institutions in enacting § 1821(k), but rather enacted the provision for the purpose of preempting state insulating statutes.

In addition, we find it inconceivable that Congress intended to displace existing federal common law which already provided an action for conduct less culpable than gross negligence only in instances when an institution enters receivership.  If Congress had intended to codify a federal standard of liability for directors and officers of federally chartered institutions, it would not have limited its application to circumstances where the institution entered receivership.  Such an approach would, if the federal common law standard is one of ordinary negligence, create the anomalous situation of providing greater protection from liability to directors and officers when their institutions go insolvent, since before receivership directors and officers would be subject to derivative claims for ordinary negligence by the "Corporation," while after receivership such claims would be limited to gross negligence.

This scenario would create a perverse incentive for the directors and officers who manage our nation's federally chartered institutions to decrease their risk of liability by leading their institutions into receivership.  See supra at 29–

31. Congress could not have intended to create such an incentive in enacting a statute intended to "strengthen the enforcement powers of Federal regulators." Pub. L. No. 101-73, § 101(10), 103 Stat. 183, 187 (1989). Even assuming that the proper characterization of preexisting federal common law standard (as one of negligence or gross negligence) is unclear, it seems quite unlikely that Congress would have intended to reformulate the post-receivership standard as gross-negligence, while leaving the pre-receivership standard in a state of ambiguity.[16]

---

[16] Given our conclusion that § 1821(k) does not address the liability of directors and officers of federally chartered institutions, we need not discern whether the federal common law standard is one of ordinary or gross negligence. The district court should simply permit the RTC to proceed against the City Federal defendants under existing federal common law. We note that the Supreme Court first articulated a common law standard of care for directors and officers of federally chartered depository institutions over 100 years ago in Briggs v. Spaulding, 141 U.S. 132, 11 S. Ct. 924 (1891):

> The degree of care required depends upon the subject to which it is to be applied, and each case has to be determined in view of all the circumstances. . . . [T]he duties imposed are presumed to call for nothing more than ordinary care and attention. . . . If nothing has come to their knowledge, to awaken suspicion of the fidelity of the president and cashier, ordinary attention to the affairs of the institution is sufficient. If they become acquainted with any fact calculated to put prudent men on their guard, a degree of care commensurate with the evil to be avoided is required, and a want of that care certainly makes them responsible. . . . In any view the degree of care to which these defendants were bound is that which ordinarily prudent and diligent men would exercise under similar circumstances . . . .

We also reject the defendants' contention that the federal common law was supplanted because of the scope of FIRREA. Relying on the opinion in Milwaukee, the defendants seek to capitalize on the fact that FIRREA created several agencies, such as the RTC, to deal with the thrift crisis, and conferred upon these institutions expanded federal regulatory powers over the activities of the officers and directors of insured financial institutions.  However, Milwaukee does not help the defendants' position.  In examining the scope of the legislation there in question, the Milwaukee Court relied in significant part on a number of statements in the Act's legislative history which demonstrated "the establishment of . . . a self-consciously

---

Id. at 148, 11 S. Ct. at 929.

We recognize that Briggs arose before Erie R.R. v. Tompkins, 304 U.S. 64 (1938), and hence, while addressing the liability of directors and officers of a nationally chartered bank, it did not label the articulated standard as one of federal common law. Moreover, in light of the dramatic changes to have occurred to the legal and economic environment confronted by federally-chartered depository institutions, the Supreme Court might choose to reexamine and/or refine the Briggs articulation of the common law standard of liability for directors and officers of such institutions.

Nevertheless, over a century later, the Briggs articulation of the standard of care apparently continues to apply as a matter of federal common law.  For instance, in FDIC v. Appling, 992 F.2d 1109, 1113-14 (10th Cir. 1993), the Tenth Circuit described the standard of care for directors and officers of a federally chartered bank "as requiring such care and diligence as an ordinarily prudent man would exercise with reference to the administration and management of such a moneyed institution." See also FDIC v. Bierman, 2 F.3d 1424, 1432 (7th Cir. 1993) ("Ordinary care, in this matter as in other departments of the law, means that degree of care which ordinarily prudent and diligent men would exercise under similar circumstances.").

comprehensive program by Congress." Milwaukee, 451 U.S. at 319, 101 S. Ct. at 1793 ("The 'major purpose' of the Amendments was 'to establish a comprehensive long-range policy for the elimination of water pollution.'" (quoting S. REP. NO. 92-414 at 95)). The defendants in this action can point to nothing in the plain language of the statute or its legislative history to suggest that Congress, in enacting FIRREA, intended to establish a comprehensive legislative program to address the liability of directors and officers. Rather, as we have demonstrated, the congressional purpose in enacting FIRREA, and § 1821(k) in particular, was exactly the opposite.

As Senator Sanford recognized, this provision does not represent "a wholesale preemption of longstanding principles of corporate governance, nor does it represent a major step in the direction of establishing Federal tort standards or Federal standards of care of corporate officers and directors." 135 CONG. REC. at 7151. Rather than intending exhaustively to enumerate the powers available to federal regulators, Congress sought only to strengthen the RTC's ability to recover against malfeasant directors and officers of our nation's thrifts by supplementing the laws that already regulated the activity of directors and officers, such as the federal common law standard of care. We cannot conclude solely from the enactment of provisions meant to enhance the powers of federal regulators that Congress intended to occupy the field and supplant existing

powers already available as a matter of federal common law. Rather, Congress explicitly preserved "any right" available "under other applicable law."

In sum, the intent of Congress in enacting § 1821(k) was not to insulate directors and officers of bankrupt federally insured depository institutions from federal common law liability for conduct less culpable than gross negligence. Rather, § 1821(k) reflects, as we have demonstrated, an effort to ensure that directors and officers could <u>not</u> escape liability to the RTC under the shield of certain state laws that had effectively insulated them from claims based on their grossly negligent or reckless conduct. To read any more into the enactment of § 1821(k) would, as Chief Judge Posner has recognized, "make traps of its words" and perniciously turn the statute on its head, since Congress intended this provision to strengthen, not weaken, the RTC's ability to recover for director and officer misconduct. See <u>Chapman</u>, 29 F.3d at 1126-27 (Posner, C.J., dissenting) ("What would otherwise be a more stringent standard, that of simple negligence, is diluted by interpretation of a statute intended to make the liability of such directors more stringent.").

We recognize that the two Courts of Appeals to have addressed both state law preemption and the displacement of federal common law by § 1821(k) would permit the RTC to pursue an action for negligence under state law, but not under federal

common law.  See Frates, 52 F.3d at 295 and Canfield, 967 F.2d at 443 (10th Cir.); Chapman, 29 F.3d at 1122 and Gallagher, 10 F.3d at 416 (7th Cir.).  These courts have justified such a distinction by the need for greater congressional intent to preempt state law as opposed to that necessary to displace federal common law, given the federalism concerns present when state law is preempted.  Gallagher, 10 F.3d at 424 ("'Such concerns are not implicated in the same fashion when the question is whether federal statutory or federal common law governs, and accordingly the same sort of evidence of clear and manifest purpose is not required.'" (quoting Milwaukee, 451 U.S. at 316, 101 S. Ct. at 1792); see also Milwaukee, 451 U.S. at 317, 101 S. Ct. at 1792 ("[T]he assumption [is] that it is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of federal law." (internal quotation mark omitted)).

We agree that this generalized reasoning can result, in certain instances, in a conclusion that a particular statutory enactment did not preempt state law, yet did displace federal common law.  However, in our view, the distinction is not determinative here since the plain meaning of § 1821(k) and the clear legislative history surrounding its enactment, which demonstrates that this provision was not intended to apply to federally chartered institutions, sufficiently overcome the presumption favoring the displacement of federal common law.

In reaching the contrary conclusion that § 1821(k) displaced federal common law, the courts of appeals to have considered the question have relied, in significant part, on the argument that permitting the RTC to seek recovery for a director's negligence would render § 1821(k) meaningless.  The Seventh Circuit in Gallagher stated that "[r]eading the 'savings clause' as preserving a federal common law standard of liability for less culpable conduct than gross negligence would render the substantive portion of § 1821(k) surplusage."  Gallagher, 10 F.3d at 420 ("It is illogical that Congress intended in one sentence to establish a gross negligence standard of liability and in the next sentence to eviscerate that standard by allowing actions under federal common law for simple negligence."); see also Bates, 42 F.3d at 372 ("If the court reads the savings clause to preserve simple negligence claims, then the gross negligence standard explicitly articulated . . . is redundant, meaningless surplusage."); Miramon, 22 F.3d at 1361.  Moreover, in articulating this "surplusage" argument, the Fifth Circuit in Miramon rhetorically inquired -- "Why would the RTC ever bring an action under section 1821(k), where it would have to prove gross negligence, when it could bring an action under the federal common law and only be required to prove simple negligence?"  Id.

We are unpersuaded by this argument.  Given the RTC's concession that it can only bring federal common law claims against directors and officers of federally chartered

institutions and not against their state-chartered counterparts, the answer to the Miramon court's question is clear. Concluding that § 1821(k) does not displace federal common law does not render this provision "redundant, meaningless surplusage" because the RTC still needs § 1821(k) to bring actions for gross negligence against directors and officers of institutions chartered in states with statutes insulating them from such liability. More particularly, the RTC could not bring a federal common law claim of negligence against directors and officers of depository institutions chartered in states with statutes insulating them from liability claims of gross negligence (or worse), since, as the RTC concedes, state law governs the liability of these individuals in the instances where § 1821(k) does not apply. See Chapman, 29 F.3d at 1122 (holding that the applicable law governing the liability of officers and directors for their stewardship of the corporation is the law of the jurisdiction where the institution was incorporated or chartered). Accordingly, § 1821(k) is needed to ensure that the RTC is not constrained from seeking recovery for gross negligence in instances where a state insulating statute would apply.

As we have stated, allowing the RTC to bring such actions was precisely the purpose underlying the enactment of § 1821(k). When the defendants are directors of federally chartered institutions, such as City Federal, this purpose is not present and the statute simply has no relevance. Permitting the

RTC to pursue an action under federal common law when the depository institution is federally chartered in no way renders the statute inoperative; rather such a conclusion merely appropriately limits § 1821(k) to its intended realm.

### V. CONCLUSION

We hold that Congress did not preempt existing state law or supplant federal common law holding directors and officers liable for conduct less culpable than gross negligence.[17] Accordingly, we will affirm the district court's order in the United Savings action, permitting the RTC to pursue negligence and fiduciary duty claims, if any, under New Jersey law. In the City Federal action, we will reverse the district court's order and direct the court to permit the RTC to pursue any claims for negligence or breach of fiduciary duty available as a matter of federal common law.

RTC v. Cityfed Financial Corp, et al., No. 94-5307

RTC v. Schuster, et al., No. 94-5308

MANSMANN, Circuit Judge, concurring in part and dissenting in part.

---

[17] As we have noted, in addition to bringing a claim under federal common law in the City Federal action, the RTC has also brought a claim of gross negligence under § 1821(k). Given our conclusion that Congress did not intend § 1821(k) to apply to federally-chartered depository institutions, the RTC cannot proceed under § 1821(k) in the City Federal action.

I concur in the majority's holding that section 1821(k) of the Financial Institutions, Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. § 1821(k), does not preempt claims for simple negligence or breach of fiduciary duty that may be available to the RTC under state law.  I respectfully dissent, however, from Part IV of the opinion, where the majority holds that section 1821(k) does not supplant the RTC's ability to bring such actions under federal common law.  I find the majority's conclusion contrary to the statute's language and legislative history.  I believe that section 1821(k) establishes a gross negligence standard of liability in suits brought by the RTC against the directors and officers of federally-chartered insured depository institutions, and accordingly would hold, as our sister courts of appeals in the Fifth, Sixth, Seventh and Tenth Circuits have held[18], that the federal common law standard of simple negligence[19] must yield to section 1821(k)'s higher standard in such cases.

---

[18]  RTC v. Frates, ___ F.3d ___ (10th Cir. 1995) [1995 U.S. App. LEXIS 7990]; RTC v. Bates, 42 F.3d 369 (6th Cir. 1994); RTC v. Miramon, 22 F.3d 1357 (5th Cir. 1994); RTC v. Gallagher, 10 F.3d 416 (7th Cir. 1993).

[19]  The majority does not decide what standard of liability controls under the federal common law.  Nevertheless, it strongly suggests in footnote 16 that it is one of ordinary (or simple) negligence and discusses the question before us as if the federal common law would permit the RTC to sue the directors and officers of failed federally chartered insured depository institutions for simple negligence.

My analysis is guided throughout by the vastly different tests the Supreme Court has instructed us to use when deciding whether a federal statute supplants federal common law on the one hand, or preempts state law on the other. When considering state law preemption, "`we start with the assumption that the historic police powers of the States are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress'". Milwaukee v. Illinois, 451 U.S. 304, 316 (1981) (citations omitted). By contrast, when the question is whether federal statutory or federal common law governs, "`we start with the assumption' that it is for Congress, not federal courts, to articulate the appropriate standards to be applied as a matter of law." Id. at 317 (footnote omitted). Federal common law is a "`necessary expedient'", resorted to in the absence of a federal statute and is "`subject to the paramount authority of Congress.'" Id. at 313-14 (citations omitted). Although a statute will not invade well established principles of common law unless a statutory purpose to the contrary is present, United States v. Texas, ___ U.S. ___, 113 S. Ct. 1631, 1634 (1993), when Congress "speak[s] directly" to the question addressed by the common law, federal common law is supplanted. Id.; Milwaukee v. Illinois, 451 U.S. at 315. Moreover, it is not necessary for Congress to "affirmatively proscribe" the federal common law rule in order to abrogate its application. Id.

I.

All questions of statutory interpretation start with the language of the statute itself, and "[a]bsent a clearly expressed legislative intent to the contrary, `that language must ordinarily be regarded as conclusive.'" Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 835 (1990), quoting Consumer Product Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980).

Section 1821(k) has two parts: a substantive provision and a savings clause. In the first sentence, section 1821(k) provides that "[a] director or officer of an insured depository institution may be held personally liable in any civil action by[] . . . the [RTC] . . . for gross negligence, including any similar conduct or conduct that demonstrates a greater disregard of a duty of care . . . as such terms are defined and determined under applicable State law[]"; and in the second sentence, saves "any right of the [RTC] under other applicable law".[20] Under

---

[20] Section 1821(k) provides in pertinent part:

**(k) Liability of directors and officers**

A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action by, on behalf of, or at the request or direction of the Corporation, which action is prosecuted wholly or partially for the benefit of the Corporation . . . for gross negligence, including any similar conduct or

FIRREA, "the term `insured depository institution' means <u>any</u> bank or savings association the deposits of which are insured by the [Federal Deposit Insurance] Corporation pursuant to this chapter."  12 U.S.C. § 1813(c)(2) (emphasis added).  Thus, that Congress has spoken directly in section 1821(k)'s substantive provision to the standard of liability for the directors and officers of all failed federally-insured depository institutions, including those with a federal charter is, I believe, not open to question.

I also do not share the majority's confidence in the clarity of the savings clause.[21]  Beginning its analysis by inquiring whether any terms of section 1821(k) "`explicitly preserv[e] or preempt[] judge-made law[]'", the majority "read[s] the plain meaning of th[e] savings clause as preserving the RTC's

---

> conduct that demonstrates a greater disregard of a duty of care (than gross negligence) including intentional tortious conduct, as such terms are defined and determined under applicable State law.  Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law.

12 U.S.C. § 1821(k).

[21]   I could not discern the meaning of the savings clause without reference to section 1821(k)'s legislative history.  In my view, the savings clause ensures that even though state insulating statutes are preempted, state law which imposes a higher standard than section 1821(k)'s gross negligence liability standard, holding directors and officers liable for simple negligence, remains available to the RTC.  <u>See</u> <u>supra</u> pp. 9-10.

right to proceed against directors and officers of federally-chartered institutions under federal common law."  Majority Op. at 32-33.  This interpretation of the savings clause, however, has been rejected by our sister courts as contrary to elementary canons of statutory construction.  They have concluded that if the savings clause were construed to preserve federal common law actions for simple negligence, then the language of the substantive sentence of section 1821(k) which specifically enunciates a cause of action for gross negligence would be meaningless surplusage and rendered a nullity.  I agree.  RTC v. Bates, 42 F.3d 369, 372 (6th Cir. 1994); RTC v. Miramon, 22 F.3d 1357, 1361-62 (5th Cir. 1994); RTC v. Gallagher, 10 F.3d 416, 420 (7th Cir. 1993).  See RTC v.Frates, ___ F.3d ___ (10th Cir. 1995) [1995 U.S. App. LEXIS 7990 at 4].  ("[W]e believe Ga[l]agher, Miramon, and Bates have correctly resolved the [federal common law displacement] issue . . . and we see no reason to depart from or add to the analysis . . . .").

To avoid this dilemma, the majority informs us that section 1821(k) does not address the liability of directors and officers of federally-chartered depository institutions in RTC actions and was enacted only to preempt state insulating statutes.  I have difficulty comprehending how section 1821(k) can preserve the RTC's right to sue the directors and officers of federal financial institutions for simple negligence under federal common law, and at the same time, not address the

liability of these individuals in RTC actions.  The majority
cannot have it both ways; either section 1821(k) addresses the
issue or it does not.[22]

The majority's position that section 1821(k)'s
"intended realm" is limited to state chartered depository
institutions, Majority Op. at 44, flies in the face of FIRREA's
applicable definitional provisions.  As noted, section 1821(k)
covers directors and officers of "insured depository
institution[s]", an all-inclusive term as defined in 21 U.S.C. §
1813(c)(2).  Subsections 1813(c)(4) and (5), on the other hand,
distinguish between and define respectively "Federal depository
institution[s]" and "State depository institution[s]".[23]  If

---

[22]  I would also disagree with the view that the
substantive sentence of section 1821(k) speaks only to RTC
actions against the directors and officers of state institutions
and the savings clause speaks to RTC actions against the
directors and officers of both state and federal institutions.
Neither the statute's language nor its legislative history
indicates that Congress restricted the subject matter of section
1821(k)'s first sentence to state institutions, then expanded it
to include state and federal institutions in the second.
Further, if section 1821(k)'s substantive provision only concerns
state insulating statutes, federal common law need not be
"preserved".  Finally, "other applicable law" in the savings
clause cannot refer to federal common law if the substantive
provision relates only to actions involving state institutions,
because federal common law does not have a place in such actions.

[23]  Subsections 1813(c)(4) and (5) provide:

**(4) Federal depository institution**

The term "Federal depository institution"
means any national bank, any Federal savings
association, and any Federal branch.

section 1821(k) was intended to apply only to state institutions, Congress would have referred in the statute to insured "State depository institution[s]".  Indeed, when Congress sought to restrict the application of section 1821's subsections to state institutions, it did so explicitly by using the appropriate term. E.g., 12 U.S.C. § 1821(c)(3)(A) ("Whenever the authority having supervision of any insured State depository institution . . . appoints a conservator . . . the Corporation may accept such appointment.")(emphasis added).

Moreover, the majority's position that section 1821(k)'s scope is limited to state institutions is premised on what I believe to be an erroneous interpretation of the statute. The majority states that since "gross negligence" does not have a "generally accepted meaning", Majority Op. at 36, had Congress intended to speak directly to the standard of liability for directors and officers of federally chartered institutions it would have clarified which formulation of gross negligence applies in such cases.[24]  In addition, the majority concludes

---

**(5) State depository institution**

> The term "State depository institution" means any State bank, any State savings association, and any insured branch which is not a Federal branch.

21 U.S.C. § 1813(c)(4),(5).

[24]    In making this point, the majority cites FDIC v. McSweeny, 976 F.2d 532, 539 (9th Cir. 1992), cert. denied, ___ U.S. ___, 113 S. Ct. 2440 (1993), and FDIC v. Canfield, 967 F.2d 433, 447 (10th Cir. 1992).  In these cases, the courts concluded

that a federal statutory gross negligence standard and section 1821(k)'s reference in the first sentence to "applicable State law" cannot co-exist.  I do not find them mutually exclusive, and read the statute as directing the courts to define "gross negligence" in cases involving failed federal depository institutions by the state law that has the closest connection to the institution at issue.  Congress has, at various times and in various contexts, enacted statutes which rely upon state laws of decision in an overall federal statutory scheme.  In re TMI Litigation Cases Consol. II, 940 F.2d 832, 855 (3d Cir. 1991), cert. denied, 503 U.S. 906 (1992).[25]  Concepts of negligence fall

that section 1821(k) does not preempt state law claims for simple negligence, viewing the statute's reliance on state law for the definition of gross negligence as directly refuting the proposition that FIRREA establishes a uniform, national standard of gross negligence liability.  Id.

Since its decision in Canfield, the Court of Appeals for the Tenth Circuit has held that section 1821(k) supplants federal common law.  RTC v. Frates, ___ F.3d ___ (10th Cir. 1995) [1995 U.S. App. LEXIS 7990]

[25]     Examples of federal statutes that explicitly authorize the use of state law include:  the Price-Anderson Amendments Act of 1988, 42 U.S.C. § 2014(hh) (the "substantive rules for decision" in public liability actions "shall be derived from" the law of the state in which the nuclear incident occurs); the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(the law of the place where the act or omission occurred determines the liability of the United States); 16 U.S.C. § 457 (claims for death or personal injury within a federal enclave are governed by laws of the state); the Outer Continental Shelf Lands Act, 43 U.S.C. § 1333(2)(A) (the civil and criminal laws of each adjacent state are the law of the United States regarding the Outer Continental Shelf's subsoil and seabed).  At times, the use of state law in a federal scheme is a matter of congressional intent.  See, e.g., Reconstruction Finance Corp. v. Beaver County, 328 U.S. 204

squarely within the province of the state courts and the conduct that rises to the level of gross negligence may vary from place to place. Thus, a direction from Congress to look for guidance to the law of the locality in which a federally chartered depository institution is based represents a sensible and reasonable way to determine the parameters of the gross negligence liability standard in any given case.

I therefore read the plain meaning of section 1821(k) as "speaking directly" to the standard of liability applicable in suits brought by the RTC against the directors and officers of federally chartered insured depository institutions, and setting it at gross negligence.

## II.

When I look for legislative history that contradicts section 1821(k)'s plain meaning as I see it, I find none; and in fact, I find legislative history showing that Congress had before it several competing concerns when enacting section 1821(k) which it resolved in favor of a gross negligence liability standard.

Congress was aware that a number of states had enacted legislation that shields directors and officers from liability except for reckless or willful breaches of duty in order to

_____

(1946) (Congress intended that state law define "real property" for tax purposes under the Reconstruction Finance Corporation Act.).

persuade capable individuals to accept corporate directorships. Finding an intentional tort standard of liability unacceptably high, Congress enacted section 1821(k) with at least the purpose in mind to preempt state insulating statutes. RTC v. Miramon, 22 F.3d 1357, 1363 n.9 (5th Cir. 1994). At the same time, however, Congress was not prepared to displace all state law. Thus, the evolution of section 1821(k) from preliminary to final form was toward less preemption, FDIC v. McSweeny, 976 F.2d 532, 540 (9th Cir. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 2440 (1993), with Congress ultimately leaving it, through the savings clause, to each state to decide whether a simple negligence standard is appropriate within its own borders.[26]

While Congress sought to set a standard of liability in section 1821(k) that provided federal regulators with adequate enforcement power, Pub.L. No. 101-73, § 101(9)-(10), 103 Stat. 183, 187 (1989), it also understood the importance of attracting qualified persons to serve as officers and directors of financial institutions.[27]  RTC v. Gallagher, 10 F.3d 416, 422 (7th Cir.

---

[26]    During the floor debate in the Senate on the managers' amendment to the Senate's original bill, Senator Riegle, the bill's sponsor, explained that the amended bill sought to limit the preemptive scope of section 1821(k) to state insulating statutes. See Majority Op. at 20.

[27]    The remarks of Senator Sanford during the floor debate on the managers' amendment indicate that Congress was concerned that financial institutions be able to attract competent management:

> Mr. President, I would like to thank the distinguished managers of the bill, Senator

1993).  Accordingly, the standard of liability to be included in the statute -- simple or gross negligence -- was a matter of debate.  While the Senate's initial bill would have allowed the RTC to bring claims "for any cause of action available at common law, including but not limited to, negligence, gross negligence, willful misconduct, breach of fiduciary duty . . . .", S.774, §

---

RIEGLE and Senator GARN, for including in the managers' amendment modifications to the bill regarding directors and officers liability insurance contracts, surety bond, and financial institution bond contracts, and provisions relating to State laws affecting the liability of officers and directors of financial institutions.

I believe that these changes are essential if we are to attract qualified officers and directors to serve in our financial institutions.

135 Cong.Rec. S4276-77 (daily ed. April 19, 1989).

During this same debate, Senator Heflin noted the need for changes in the Senate bill to "ensure that financial institutions are able to attract strong and capable individuals as directors and officers[]", and Senator Riegle agreed.  Id. at S4264-65.  Although Senator Heflin's comments were made in connection with modifications to FIRREA's "standard for imposition of civil penalties" provision, now codified at 21 U.S.C. § 1818(i)(2), I, unlike the majority, believe that the Senator's statements further our understanding of section 1821(k).  The Supreme Court has counseled that "`[t]he true meaning of a single section of a statute . . ., however precise its language, cannot be ascertained if it be considered apart from related sections. . . .'"  Commissioner v. Engle, 464 U.S. 206, 223 (1984), quoting Helvering v. Morgan's, Inc., 293 U.S. 121, 126 (1934).  See also Richards v. United States, 369 U.S. 1, 11 (1962) ("We believe it fundamental that a section of a statute should not be read in isolation from the context of the whole Act . . . .").

214(n), 101st Cong., 1st Sess. at 105-106 (calendar N. 45, April 13, 1989), its amended version removed, _inter_ _alia_, all references to a simple negligence standard:

> [A director or officer of an insured financial institution may be held personally liable] for gross negligence, or intentional conduct, as those terms are defined and determined under applicable State law. Nothing in this paragraph shall impair or affect any right, if any, of the [FDIC] that may have existed immediately prior to the enactment of the [FIRREA] Act.

135 Cong.Rec. S4452 (daily ed. April 19, 1989).[28]

---

[28]     The majority relies exclusively on the following Senate Report as demonstrative of Congress' intent to "explicitly preserve[] any federal remedy for conduct violating a lower standard of care, such as simple negligence[]", Majority Op. at 34-35:

> [Section 1821(k)] enables the FDIC to pursue claims against directors or officers of insured financial institutions for gross negligence (or negligent conduct that demonstrates a greater disregard of a duty of care than gross negligence) or for intentional tortious conduct. This right supersedes State law limitations that, if applicable, would bar or impede such claims. This subsection[] does not prevent the FDIC from pursuing claims under State law or under other applicable Federal Law, if such law permits the officers or directors of a financial institution to be sued (1) for violating a lower standard of care, such as simple negligence, or (2) on an alternative theory such as breach of contract or breach of fiduciary duty . . . .

S.Rep. No. 19, 101st Cong., 1st Sess., 135 Cong.Rec. 6912 (daily ed. June 19, 1989).

Commenting in favor of the amended bill, Senator Sanford unmistakenly articulated Congress' intent to establish a standard of liability of gross negligence in section 1821(k) and clarified that the standard Congress enacted for actions brought under the statute was not intended for other cases:

> While I fundamentally believe that issues of corporate governance and the standard of care to which corporate officers and directors should be held are matters of State law, not Fed[e]ral law, the preemption of State law permitted by this bill is limited solely to those institutions that have Federal deposit insurance and to those cases in which the directors of officers have committed intentional torts or acts of gross negligence. As such, the establishment of a federal standard of care is based on the overriding Federal interest in protecting the soundness of the Federal Deposit Insurance Corporation fund and is very limited in scope. It is not a wholesale preemption of longstanding principles of corporate governance, nor does it represent a major step in the direction of establishing Federal tort standards or Federal standards of care of corporate officers and directors.

---

If this were the only item of legislative history before us, I would find the majority's position more persuasive. When I consider the Report in context, however, I do not believe it supports the majority's position. The Report was prepared by the Senate Banking Committee that drafted the Senate's original bill. Due to the press of time, it was not placed in the Congressional Record until two months after the Senate voted on and passed the amended bill. Id. at S6934. As noted, the original bill was modified substantially to delete references to simple negligence. I therefore question the Report's value. RTC v. Miramon, 22 F.3d 1357, 1362 (5th Cir. 1994) ("[E]xamination of all of the legislative history, and scrutiny of the sequence of events leading up to the bill's passage, calls into question the conclusion of th[e] report.").

<u>Id.</u> at S4264–65.[29]

The House version of section 1821(k), passed after the Senate version, H.R. 1278, 101st Cong., 1st Sess., 135 Cong.Rec. H2602 (daily ed. June 15, 1989), and the version that was ultimately voted into law, preserved the Senate's removal of the simple negligence standard.  <u>See</u> Pub.L. No. 101–73, 103 Stat. 183 (Aug. 9, 1989), <u>reprinted</u> <u>in</u> 1989 U.S.C.C.A.N. 86.  The House-Senate Conference Report which represents the final statement of terms agreed upon by both Houses of Congress confirms that Congress decided upon a gross negligence standard for section 1821(k):

> Title II preempts State law with respect to
> claims brought by the FDIC in any capacity
> against officers or directors of an insured
> depository institution.  The preemption
> allows the FDIC to pursue claims for gross
> negligence or any conduct that demonstrates a

---

[29]   The majority also points to Senator Sanford's comments for support.  While the Senator's comments certainly demonstrate that section 1821(k) was not intended to set a universal standard of director and officer liability, I do not believe they support the view that Congress did not address the standard of liability to be used in this RTC action.

Further, I believe the Senator's comments cast doubt on the majority's statement that "[e]ven assuming that the proper characterization of preexisting federal common law standard (as one of negligence or gross negligence) is unclear, it seems quite unlikely that Congress would have intended to reformulate the post-receivership standard as gross negligence, while leaving the pre-receivership standard in a state of ambiguity."  Majority Op. at 37.  It appears that when enacting section 1821(k), Congress did not focus on the duty of care that directors and officers of financial institutions may owe their shareholders or third parties in pre-receivership situations or on duties of care in other areas.

greater disregard of a duty of care, including intentional tortious conduct.

H.R.Conf.Rep. No. 222, 101st Cong. 1st Sess. 393, 398 (1989), reprinted in 1989 U.S.C.C.A.N. 432, 437.

Events which occurred after the statute's enactment also confirm that Congress established a standard of liability greater than simple negligence in section 1821(k). I recognize that post-enactment legislative history is not as weighty as legislative history that is contemporaneous with a statute's passage, but as the Supreme Court has instructed, I would "be remiss" to ignore it. Cannon v. University of Chicago, 441 U.S. 677, 687 n. 7 (1979). There were two unsuccessful efforts to amend section 1821(k) to include a simple negligence standard of liability, one by the FDIC,[30] and the other by Congressman Baker of Louisiana.[31] Gallagher, 10 F.3d at 423. Only the presence of

---

[30] The FDIC amendment provided:

Nothing in this subsection shall impair or affect any right of the [RTC] under other applicable State or Federal law, including a right to hold such director or officer personally liable for negligence.

Miramon, 27 F.3d at 1363 n.10.

[31] The Baker amendment provided:

Paragraph (1) shall not be construed as impairing or affecting any right of the . . . [RTC] under any provision of applicable State or other Federal law, including any provision of common law or any law establishing the personal liability of any director or officer

a gross negligence standard in section 1821(k) would have precipitated these attempts to reintroduce simple negligence as a standard in the statute. Further, had Congress preserved the federal common law standard in section 1821(k), as the majority contends, these amendments would not have been necessary.

Finally, the public policy consideration the majority raises regarding the "perverse incentive" that would be created if the pre-receivership liability standard is simple negligence and the post-receivership standard is higher, Majority Op. at 37, may be more imagined than real. I have no reason to believe that the directors and officers of federal depository institutions will allow their institutions to fail in order to take advantage of section 1821(k)'s gross negligence standard. If, however, the statute has this result, it flows from the statute as written, which is for Congress to correct. FMC Corp. v. U.S. Dep't of Commerce, 29 F.3d 833, 846 (3d Cir. 1994) (declining to amend CERCLA by "judicial fiat").

III.

In my judgment, the only reading of section 1821(k) consistent with its plain meaning and its legislative history is

---

of an insured depository institution under any standard pursuant to such law.

H.R. 3435, 102nd Cong., 1st Sess. § 228 (Comm. Markup Oct. 18, 1991).

that the statute "speaks directly" to the standard of liability applicable to the directors and officers of state and federal federally-insured depository institutions in RTC actions.  I must, therefore, conclude that the federal common law in this area is supplanted.  Milwaukee v. Illinois, 451 U.S. 304, 313-16 (1984).